**U.S. DISTRICT COURT**
**FOR**
**THE DISTRICT OF COLUMBIA**

Jela JEVREMOVIC                 *
4545 Connecticut Avenue N.W.
Apartment 711                    *
Washington, D.C. 20008,
               Petitioner       *

              v.                     *      Case: 1:07-cv-01278 RMB

Michael CHERTOFF, Secretary       *
U.S. Department of Homeland Security
425 Murray Drive; Building 410       *
Washington, D.C. 20528,
              Respondent      *

Emilio T. GONZALEZ, Ph.D., Director    *
U.S. Citizenship & Immigration Services
20 Massachusetts Avenue N.W.        *
Washington, D.C. 20529,
              Respondent      *

Robert S. MUELLER III, Director       *
Federal Bureau of Investigation
935 Pennsylvania Avenue N.W.        *
Washington, D.C. 20525,
              Respondent      *

**OPPOSITION TO MOTION TO DISMISS**

COMES NOW THE PETITIONER, Jela Jevremovic, by and through counsel, and states

that the government has failed in meeting the standards for a Motion to Dismiss under Rule

12(b)(1) and, as reasons for such, states as follows:

      1. The government has asserted in its Motion to Dismiss under Fed. R. Civ. P. 12(b)(1)

that this Honorable Court does not have subject matter jurisdiction under the federal question

statute, 28 U.S.C. § 1361, the mandamus statute, 28 U.S.C. § 1361, and the Administrative

Procedure Act, 5 U.S.C. §§ 555(b), 704. According to the U.S. Attorney's argument, it has not

unlawfully withheld any action, the FBI's name check is not legally required by a date certain,

and that there is no statutory requirement to adjudicate Petitioner's Application for Citizenship.

Further, the U.S. Attorney asserted that Congress did not specify any time frame within which

USCIS is to conduct naturalization proceedings, should it so choose, adding that Congress

doesn't permit aliens to have recourse to U.S. courts except in very limited circumstances. The

government goes on to say that federal courts may not set deadlines for agency action.

   2. The government is wrong and its argument supports unconscionable behavior by U.S.

agencies. 28 U.S.C. § 1331 provides a general grant of subject mater jurisdiction to federal

district courts in civil actions over "federal questions" arising under the laws of the United States.

The Supreme court has found that 28 U.S.C. § 1331 serves as the jurisdictional basis for federal

courts "to review agency action". Califano v. Sanders, 430 U.S. 99 (1977).

## JURISDICTIONAL CHALLENGE

   3. Apparently, in its "argument", the government is raising a jurisdictional challenge

while simultaneously claiming that the grounds for a valid cause of action are insufficient. *See*

Steel Co. v. Citizens for a Better Environment 523 U.S. 83, 89 (1988). *See also* Ahmed v. DHS,

328 F.3d 383, 386-87 (7th Cir. 2003). (Distinguishing between the court's power to adjudicate

the case, which is jurisdictional, and the court's power to grant relief, which is not jurisdictional.)

   4. Failure to state a valid cause of action calls for a judgment on the merits and not for

dismissal for want of jurisdiction. Bell v. Hood, 3237 U.S. 678, 682 (1946). The Supreme Court

made pellucidly clear that:

2

> jurisdiction...is not defeated...by the possibility that the averments might fail to
> state a cause of action on which petitioners could actually recover. Rather, the
> district court has jurisdiction if 'the right of the petitioners to recover under their
> complaint will be sustained if the laws of the United States are given one
> construction and will be defeated if they are given another...'

Steel Co. 523 U.S. at 89 (quoting Bell, 327 U.S. at 682, 685. Thus, the Ahmed court has

held that in resolving whether mandamus jurisdiction is present in an immigration case, the

allegations of the complaint are taken as true (unless patently frivolous) to avoid "tackling the

merits under the ruse of assessing jurisdiction." Ahmed, 328 F.3d at 386-387.

5. Applying these principles, the 7th Circuit held in Ahmed that the question of whether a

statute imposed a "duty" on the government for purposes of mandamus relief was not a

jurisdictional question. As the court explained:

> [T]he district court has jurisdiction under § 1361 (the mandamus statute) to
> determine whether the prerequisites for mandamus relief have been satisfied: does
> the plaintiff have a clear right to the relief sought; does the defendant have a duty
> to perform the act in question; and is there no other adequate remedy available...A
> conclusion that any of those prerequisites is missing should lead the district court
> to deny the petition, not (for lack of jurisdiction) but because the plaintiff has not
> demonstrated an entitlement to this form of extraordinary relief.

Ahmed, 328 F.3d at 386-87

6. THEREFORE, this is not a jurisdictional question and cannot lead to dismissal under

Rule 12(b)(1). To reiterate, (1) Ms. Jevremovic has a clear right to relief: she has applied for

naturalization as a citizen of the United States of America in accordance with the law, to wit, The

Immigration and Nationality Act (INA), § 310 *et seq.* (8 U.S.C. § 1421 *et seq.*) As a Legal

Permanent Resident, she seeks protection under the laws of the United States and her "clear

right" to relief falls within the "zone of interests" of the INA, i.e. the interests sought "to be

protected are within those...to be protected or regulated by the statute..." Association of Data

Processing Service Organizations, Inc. v. Camp, 397 U.S. 150, 150 (1970). (2) The INA prescribes as mandatory (or ministerial) an investigation of an applicant for naturalization. This investigation may be waived in an individual case. INA § 335(a). § 335(d) reads: "The employee designated [by the Attorney General of the United States ] to conduct any such investigation shall make a determination as to whether the application should be granted or denied, with reasons therefor." In the instant case, the government apparently has not taken any action on Ms. Jevremovic's application, either to investigate her, or to waive the investigation, or to grant citizenship or to deny her application. To date, governmental inability or unwillingness to act has lasted nearly 18 months. (3) There is no other remedy at law available to Petitioner. Under the INA (§ 310), USCIS (through the Attorney General) has sole responsibility for granting the naturalization of aliens.

## Mandamus Action

7. In its Motion to Dismiss, the government has claimed that the FBI and USCIS do not owe a legal duty to an applicant to adjudicate his application. As noted above, this Petition for Mandamus is not based on a jurisdictional question and is not subject to dismissal under 12(b)(1). The FBI and USCIS in fact owe a legal duty to Petitioner to adjudicate her application. The Immigration and Nationality Act (INA) and its implementing regulations impose this duty on them. The Administrative Procedure Act also imposes an independent duty to adjudicate the Petitioner's application for citizenship on both agencies.

8. When viewed as a whole, the INA and implementing regulations demonstrate that Congress indeed intended to impose a duty on USCIS to adjudicate all properly filed applications and that the agency, through its regulations, is to carry out this intent. While the statute gives

4

USCIS some discretion about the actual decision, Congress did not intend that USCIS have the discretion to NOT decide an application (or to unconscionably delay its decision).

9. USCIS imposes a mandatory adjudication fee for citizenship applications and this creates a duty to actually decide the application. *See* 8 U.S.C. § 1356(m). Those regulations mandate that a non-refundable fee be paid in advance. *See* 8 C.F.R. §§ 103.2(a)(1) and ((a)(7). The fee for naturalization when Petitioner Jevremovic applied was $330.00 plus $70.00 for fingerprinting. USCIS now charges $595.00 plus $80.00 for fingerprinting. USCIS has made clear that the reason for the increase was to ensure that the adjudication fee covered the full cost of adjudication an application. It is therefore untenable for the government to charge substantial fees for adjudication costs of each citizenship application and then to argue that it has no duty to timely adjudicate a properly filed application.

10. Because the INA and federal regulations impose a duty to issue a decision and schedule an interview, these provisions also impose a duty to promptly adjudicate the application. This duty implicitly requires the adjudication of all applications to determine those that are to be approved. Moreover, the duty to make a decision on all applications is explicit in the regulations. *See*, e.g. 8 C.F.R. § 103.2(b)(19); 8 C.F.R. § 245.2(a)(5). Additionally, the instructions to the application inform an applicant that he will be notified in writing of a decision on the application. The instructions are incorporated into the regulations, with the same effect. *See* e.g. 8 C.F.R. § 103.2(a)(1). In the instant case, Ms. Jevremovic received a Notice of Action (Form 797-C) stating that her Application for Naturalization had been received on May 11, 2006 and that she should expect to be notified of the date and place of her interview within 90 days of that Notice, i.e. by August 10, 2006.

11. The non-discretionary, ministerial duty of notifying an applicant of a decision cannot be carried out unless the application is decided. Thus, the duty to make a decision and notify the applicant carries with it a duty to adjudicate the application.

12. The remaining regulatory structure demonstrates that USCIS has a duty to adjudicate applications for citizenship. Other regulations presume that a decision must be made on all applications, thus underscoring the intent discussed above. For example, several regulations dictate how certain applications must be decided. *See* 8 C.F.R. §§ 103.2(b)(12); 103.2(b)(14); 103.(b)(8)(i). Other regulations dictate the sequence of the adjudicatory process. *See* 8 C.F.R. §§ 103.2(b)(6); 103.2(b)(8)(ii)-(iv); 103.3(a)(1); 103.2(b)(16); 245.2(a)(5). Finally, one regulation specifically imposes a duty on USCIS to make a decision upon the request of he application, even in the absence of all requested evidence. 8 C.F.R. § 103.2(b)(14). It would make no sense for the government to have imposed on itself a duty to make a decision where not all evidence is submitted, but no duty where all requested evidence is submitted.

13. The limited flexibility in the regulations for processing an application does not absolve USCIS of the duty to adjudicate it.

### Administrative Procedure Act

14. The Administrative Procedure Act imposes an independent duty to adjudicate an application on USCIS. Section 555(b) of the APA, 5 U.S.C. § 555(b), requires that "[w]ith due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it." A number of courts of appeal have held that § 555(b) creates a non-discretionary duty to conclude agency matters.. *See, e.g.,* Friends of the Bow v. Thompson, 124 F.3d 1210, 1220-21 (10th cir. 1997);

Litton Microwave Cooking Prods. v. NLRB, 949 F.2d 249, 253 (8th Cir. 1991); Estate of French v. FERC, 603 F.2d 1158 (5th Cir. 1979); and Silverman v. NLRB, 543 F.2d 428, 439 (2nd Cir. 1976).

15.    Moreover, § 555(b) requires that agency matters be resolved within a reasonable time A violation of this duty is a sufficient basis for mandamus relief. *See, e.g.,* Sierra Club v. Thomas, 828 F.2d 783, 797 (D.C. Cir. 1987).

16.    Courts have reached this same result in APA cases brought in the immigration context. *See, e.g.,* Toor v. Still, 2007 U.S. Dist. LEXIS 53173, *4-5 (N.D. Cal. July 10, 2007); Yue Yu v. Brown, 36 F.Supp.2d 922, 928 (D.N.M. 1999); Xu v. Chertoff, 2007 U.S. Dist. LEXIS 50027, *7 (D.N.J. July 11, 2007); Haidari v. Frazier, 2006 U.S. Dist. LEXIS 89177, *9-10 (D. Minn. 2006).

17.    Under the mandamus statute, an agency's duty to act on a duty owed a person does NOT depend upon a statutory or regulatory timeframe.  The relevant section of the APA, § 555(b), requires only that agency matters be resolved within a reasonable time.  Courts have held that the underlying statute and regulations do not have to include SPECIFIC time frames.  A violation of this duty is a sufficient basis for mandamus relief. (Emphasis added.)

18.    The seminal case on assessing claims of agency delay, TRAC V. FCC, 750 F.2d 70 (D.C. Cir. 1984), specifically acknowledges that courts will be called on to assess delay even in the absence of a statutory deadline.  The TRAC court lists 6 factors useful in assessing delay. *See* TRAC, 750 F.2d at 80.  The 2nd factor addresses cases in which Congress provided a timetable for agency action in the enabling statute. Id. By setting forth a single factor applicable only in cases where the enabling statute does provide a timeframe, the TRAC court necessarily

7

contemplate that courts will assess delay even in the absence of timeframes. There are numerous

other examples of courts assessing the reasonableness of delay under the APA in the absence of a

deadline in the underlying statute. *See, e.g.,* Forest Guardians v. Babbitt, 174 F.3d 1178, 1190

(10th Cir. 1998); Sierra Club, 828 F.2d at 796-98; Toor, 2007 U.S. Dist. LEXIS 53173, at *12-

13; Singh v. Still, 470 470 F.Supp. 2nd 1064, 1072 (N.D. Cal. 2007); Kim v. Ashcroft, 340

F.Supp. 384, 393 (S.D.N.Y. 2004).

19.    Moreover, the presence of a timeframe within one section of the INA, but its absence

in another, does not indicate Congress' intent to bar courts from reviewing the latter. Congress is

presumed to know that the APA requires agency action within a reasonable period, and this does

not need to include a specific timeframe in every statute. Finally, courts have held that Congress

must be explicit when an agency should not be subject to the APA's reasonableness standard.

*See, e.g.,* Sierra Club, 828 F. 2nd at 796-98.

### Federal Question

20.    The federal question statute, 28 U.S.C. § 1331, provides this Honorable Court with

jurisdiction over an APA suit. The APA provides the court with a cause of action for

unreasonable agency delay. While there is an exception to the APA cause of action (when

"agency action is committed to agency discretion by law"), 5 U.S.C. § 701(a), the government

does not have discretion to refuse to adjudicate a citizenship application. This exception applies

only in rare instances where discretion is entirely unfettered--that is, where a court would have no

meaningful standards by which to judge the agency's action. *See, e.g.,* Lincoln v. Vigil, 508 U.S.

182, 190 (1993). Here, as explained above, both the INA and the regulations provide guidance

by which to judge the agency's delay. *See, e.g.,* M.B. v. Quarantillo, 301 F.3d 109, 112-113 (3rd

8

Cir. 2002), finding that an agency's regulation could supply the "law to apply" in an APA case.

21. Additionally, 8 U.S.C. § 1252(a)(2)(B)(ii) does not bar jurisdiction over mandamus and APA cases. While the section is oriented towards removals, by its specific terms, this section only bars review of a "decision or action" specified to be in the "discretion" of the Attorney General or the Secretary of DHS. Id.

22. Courts generally read this section narrowly and require that the grant of discretion be explicit in a relevant statutory provision. *See, e.g.,* Soltane v. U.S. Department of Justice, 381 F.3d 143, 146 (3rd Cir. 2004); Zafar v. U.S. Atty. Gen., 461 F.3d 1360 (11th Cir. 2006); Zhao v. Gonzalez, 404 F.3d 295, 303 (5th Cir. 2005). Here the agency's failure to adjudicate an adjustment application is not "specified" in the adjustment statute as being within an agency's discretion. 8 U.S.C. § 1225 authorizes discretion to grant or deny an adjustment application, but does not specify any agency authority to fail to act on an adjustment application. *See, e.g.* Duan v. Zamberry, 2007 U.S. LEXIS 12697, *6 (WD. Pa. Feb. 23, 2007), *quoted in* Linville v. Barrows, 498 F.Supp. 2d 1278, 1282 (W.D. Okla. 2007); Yang Tang v. Chertoff, 2007 U.S. Dist. LEXIS 46030, *10 (D. Mass. June 10, 2007); *but see* Grinberg v. Swacina, 478 F.Supp. 1350 (S.D. Fla. 2007) (holding that § 1252(a(2)(B)(ii) barred review of a delayed adjustment application), *appeal filed,* No. 07-11595 (11th Cir.).

23. Additionally, § 1252(a)(2)(B)(ii) does not apply because the failure to adjudicate an adjustment application is not a "decision or action" within the meaning of this section. *See, e.g.* Iddir v. INS, 301 F.3d 492, 497-98 (7th Cir. 2002). The first step in interpreting Congressional intent is to examine the plain meaning of the statute. Courts must narrowly interpret bars to judicial review and may only limit review where the plain language of the statute indicates that

9

review is precluded.  *See* <u>Reno v. American-Arab Anti-Discrimination Committee.,</u> 525 U.S. 471, 482 (1999).

24.  Here, the plain meaning of the word "action" does not include the pace of adjudication or agency delay.  *See* Black's Law Dictionary 28 (7th ed. 1999), defining "action" as "the process of doing something" or a "thing done".  Further, the plain meaning of "action" also does not incorporate the agency's failure to act.  Any other interpretation would distort the meaning of the word, a word that implies an affirmative step in the adjudication process or actual decision on the application, and expand this meaning to include the opposite of "action", namely, inaction.  This is not a permissible construction of the plain language of § 1252(a)(2)(B)(ii).

**Delay**

25.  While most case law focuses on Permanent Residents wrestling with USCIS regarding unconscionable delays in naturalization following the citizenship interview, some courts have spoken to delay in general, the FBI's inability or unwillingness to do its job, and the fact that delay is delay, especially when it is unconscionable.

26.  In <u>Bassam Mohamed NAGEM v. United States of American et al</u>, 480 F. Supp. 2d 877 (N.D. Tex. 2007), the Court explained unreasonable delay and set forth a general schedule of FBI background checks, the same issue that is delaying Ms. Jevremovic's application for citizenship.  The Court stated that numerous applications have been submitted and FBI checks help USCIS ensure public safety by screening out unsavory people seeking immigration benefits, individuals such as rapists, child molesters, drug traffickers, etc.  BUT, the Court added, the FBI scrutinizes multiple computerized databases to determine if the applicant is ineligible for benefits.  *"This check generally takes about two weeks. In approximately 80% of the cases, no*

10

*match is found. In the remaining 20 recent, most are resolved within 6 months. Less than one*
*per cent of the cases subject to an FBI name check remain pending longer than six months.*
*Some of these cases may be classified or involve highly sensitive information that will not be*
*resolved quickly. "* (Emphasis added.)

27. Inasmuch as Ms. Jevremovic works for the United States government, of which the
Justice Department, the FBI, DHS, and USCIS are presumably a part, and is employed only
through exhaustive investigation of her background by the FBI and Central Intelligence Agency
(CIA), it is safe to say that her case is NOT, repeat NOT classified or involves highly sensitive
information. However, it is safe to say that the Respondents in the instant case are either grossly
inefficient or that they have an ulterior purpose in deliberately delaying Petitioner's application
for citizenship.

28. While the government maintains that this Honorable Court has no power over it, <u>Max</u>
<u>Alobwede Etape v. Michael Chertoff</u>, No. 06-1990, (4th Cir. August 2, 2007) states clearly that
nothing in the relevant statute enables USCIS to subvert Congress' intent to vest federal courts
with power to determine matters before them. Furthermore, the opinion stated that federal courts
should have the flexibility to apply Congress' intent to shorten the time it takes a naturalization
applicant to obtain a decision. Federal courts are a means to spur USCIS (and the FBI) to decide
naturalization applications or risk those applications being decided outside the agency.

29. As but one example of how fast the federal government can work when it is
compelled to, the court in <u>Przhebelskaya v. U.S. Bureau of Citizenship & Immigration Services,</u>
338 F.Supp.2d 399 (E.D.N.Y. 2004) noted that the FBI, subjected to a court order, suddenly was
able to complete a background check on the Plaintiffs within 48 hours (after it had delayed action

11

on the matter for 6 weeks). The court, citing <u>Panescu v. Immigration & Naturalization Service</u>, 76 F.Supp.2d 896 (N.D. Ill. 1999), characterized the FBI's delay as a "bureaucratic nightmare" and that the FBI's failure (and, by extension, USCIS' failure) "to perform a non-discretionary duty within a reasonable time deprived Plaintiffs of visas." The Court ordered all relief "to which they would have been entitled had defendants processed their applications in a timely fashion." The Court noted that, in <u>Marcetic v. Immigration & Naturalization Service</u>, 1998 WL 173129 (N.D. Ill. 1998), "[S]omeone made a ministerial error and it was not the plaintiff. Can plaintiff be denied a green card...because of that administrative error? We think not."

30. <u>Manmohanit Singh v. David Still et al</u>, 470 F.Supp.2d 1064 (N.D. Calif. 2006) dealt with the government's delay of Mr. Singh's Permanent Residence applications because the FBI name check was inconclusive. The Court emphasized that it had jurisdiction under the Administrative Procedure Act (5 U.S.C. § 555(b) ("[W]ith due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it."); see also id. § 706(1) (providing that courts shall compel agency action unlawfully withheld or unreasonably delayed"). The court added that Immigration had a duty to act and that the duty was not discretionary. It cited a New Mexico decision finding that there is indeed a difference between Immigration's discretion over HOW to resolve an application and the discretion over WHETHER it resolves an application. (Emphasis added.) <u>Yu v. Brown</u>, 36 F.Supp.2d 922, 931 (D.N.M. 1999). The <u>Singh</u> Court added that "petitioners whose applications for adjustment of status are properly before INS [USCIS' predecessor agency]...have a right, enforceable through a writ of mandamus, to have the applications processed within a reasonable time." <u>Fu</u>, 2000 WL1644490 at *5 2000 U.S. Dist.

LEXIS 16110, at *13-14.  In cases where courts have addressed the specific issue of whether

there has been unreasonable delay in processing an immigration status application, courts have

typically "looked] to the source of the delay--e.g., the complexity of the investigation as well as

the extent to which the defendant participated in delaying the proceeding." Saleh, 367 F.Supp.2d

at 512; see also Bartolini v. Ashcroft, 226 F.Supp.2d 350 (D. Conn 2002) noting the same.

## CONCLUSION

31.  For all the foregoing reasons, a Petition for a Writ of Mandamus, requiring that the

FBI, CIA, and USCIS complete the "name check" for Petitioner will lie.

- Mandamus Relief is not a matter of jurisdiction.

- USCIS owes a duty to Ms. Jevremovic by accepting her application and payment
  therefore.

- The APA requires adjudication of an application within a reasonable time.  One and one-
  half years is not reasonable but, is, in fact, unconscionable.

- Nothing in any applicable statute enables USCIS to subvert Congress' intent to invest
  federal courts with the power to determine matters before them.

32.  Therefore, it is quite reasonable to require that the appropriate U.S. government

agencies complete the said "name check" within 5 calendar days of the applicable Order being

signed; and it is further quite reasonable for USCIS to schedule a citizenship interview based on

that name check within 10 calendar days of the applicable Order being signed; and, barring any

unusual difficulties,  it is also quite reasonable for USCIS to schedule a naturalization ceremony

within 30 days of the applicable Order being signed.  Remanding the matter to USCIS would run

the risk of additional delays as retaliation against Ms. Jevremovic for winning her case.

13

33. Adding to the reasonableness of the above-noted time frames, the FBI and the CIA have previously done background investigations and "name checks" on Petitioner Jevremovic and these have not taken 18 months. This was most recently accomplished on January 14, 1999, (within 3 months of being requested on September 29, 1998). (See attached exhibits.) Ms. Jevremovic has worked at the same U.S. government agency, Voice of America, and has lived in the same apartment building on Connecticut Avenue N.W. since then.

THEREFORE, Petitioner Jevremovic prays this Honorable Court to:

1. Order Respondents to complete a "name check" within 5 calendar days of the appropriate Order's being signed;

2. Order Respondents to schedule a Citizenship Interview within 10 calendar days of the appropriate Order being signed;

3. Order Respondents to schedule a Naturalization Ceremony within 30 calendar days of the appropriate Order being signed;

4. Award reasonable attorney's fees and costs in accordance with the Equal Access to Justice Act (5 U.S.C. § 504; 28 U.S.C. § 2412) because Respondents' positions, particularly their Motion to Dismiss, were not substantially justified;

5. And grant such other and further relief as this Honorable Court, in its wisdom, deems just and appropriate.

14

Date: October 9, 2007                    Respectfully submitted,

                                         Jela Jevremovic



                                         By Counsel

                                         J. Michael Springmann
                                         Law Office of J. Michael Springmann PLLC
                                         4619 Yuma Street N.W.
                                         Washington, D.C. 20016
                                         Tel. (202) 686-4869
                                         Fax (202) 966-1254
                                         E-Mail: springmannslaw@fcc.net
                                         U.S. District Court Bar No. 465099

15

                                                              PAGE:      1
         UNITED STATES OFFICE OF PERSONNEL MANAGEMENT          SYS
                OFFICE OF FEDERAL INVESTIGATIONS

********************      CASE CLOSING TRANSMITTAL      ********************

                          CLOSED: 01/14/1999
CASE #: 99175038    TYPE/SERVICE: SAC - 35              EXTRA COVERAGE:
NAME: JEVREMOVIC, JELA NMN
SSN: 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        DOB: 03/19/1946  POSITION:

                                          ************** MAIL TO *************)
SON: I800                              *  SOI: I800
USIA                                   *  USIA
SECURITY OFFICE                        *  SECURITY OFFICE
301 4TH STREET SW                      *  301 4TH STREET SW
ROOM 761                               *  ROOM 761
WASHINGTON, DC 20547                   *  WASHINGTON, DC 20547
                                          ***********************************)

AGENCY DATA:

OPM ADJUDICATION: NO ISSUES

        THE ITEM INFORMATION SUMMARIZED BELOW, AND ANY REPORTS OF
        INVESTIGATION, INQUIRY FORMS AND/OR OTHER ATTACHMENTS WITH THIS
        TRANSMITTAL, COMPLETE THE INVESTIGATION REQUESTED ON THE PERSON
        IDENTIFIED ABOVE.   SEE THE OFI-50 WITH THIS TRANSMITTAL FOR ADDITIONAL
        INFORMATION.


********************      ITEM INFORMATION      ********************

ITM   TYPE ITEM IDENTIFICATION/LOCATION               CM RESULTS
***   **** ****************************************** ** *********************
A01   SII                                             L  NO PERTINENT
B01   FBIF                                            I  UNCLASSIFIABLE
B02   FBFN                                            L  NO RECORD
C01   FBIN                                            L  NO PERTINENT


                        ****  INVESTIGATION SUMMARY  ****
CASE TYPE     CASE #      STATUS    CA    DATE      REQUESTING AGENCY     SC  F
*********   **********  **********  **  **********  ****************  **  *
OFI794BI    P9543382    CLOSED     CM  07/20/1995   USIA
OFI794BI    P9543383    CLOSED     CM  07/20/1995   USIA
SAC         95176088    CLOSED     CM  08/09/1995   USIA             F
OFI794BI    P990000309  CLOSED     CM  10/05/1998   USIA

THE FINGERPRINT CHART SUBMITTED BY YOUR AGENCY WAS RETURNED AS UN-
CLASSIFIABLE BY THE FBI.  A SEARCH OF THEIR ALPHABETICAL NAME INDEX TO
THEIR FINGERPRINT FILES WAS MADE WITH NEGATIVE RESULTS AS EVIDENCED BY
THE 'ILLEGIBLE PRINT, NO RECORD BY NAME' STAMP APPEARING ON THE
REVERSE SIDE OF THE CHART.

OPM WILL PROCESS ONE ADDITIONAL SUBMISSION BY YOUR AGENCY TO OBTAIN
CLASSIFIABLE FINGERPRINTS.  YOUR AGENCY HAS THE OPTION OF SUBMITTING
ADDITIONAL FINGERPRINTS FOR A SEARCH OF THE FBI FINGERPRINT FILES
WITHIN ONE YEAR OF THE CLOSING DATE.

FOR OFFICIAL USE ONLY

INFORMATION IN THIS REPORT MAY NOT BE REDISSEMINATED

OPM - OFFICE OF FEDERAL INVESTIGATIONS

DATE: 10/05/1998    PERSONNEL INVESTIGATIONS PROCESSING SYSTEM           PAGE:           1
TIME: 10:55                      NOTIFICATION OF INVESTIGATION            RPI:    S1160005
SOURCE: A225                          (OFI 79)                            POM:    AGY911

ON-LINE AGENCY REQUEST

        SUBMITTING SOI: 1800
INVESTIGATION DATE: 10/05/1998           AGENCY FILE #: 34101
        APPT DATE:                          APPT TYPE:
    INVESTIGATING SOI: 1800            FILE LOCATION SOI: 1800
INVESTIGATION TYPE: 15 / ASI               OR ADDRESS:
        SENSITIVITY: 2
        SII REQUESTED: Y       FILE RELEASE REQUESTED: Y

NOTIFIER:
            NOTIFICATION ████ ACCEPTED

                                                              NO PERTINENT
                                                              INFORMATION
    SSN: 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    DOB: 03/19/1946                        OCT 06 '98 5 1 4 2
    NAME: JEVREMOVIC, JELA NMN
    POB:    ITALY

ARAS: FU: JEUREMOVIC, JELA   JOSIPA
SII SEARCH RESULTS: ████  MATCHING SUBJECT  - (DISCREPANT NAME)

    SSN: 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    DOB: 03/19/1946
    NAME: JEUREMOVIC,           JELA          JOSIPA
    POB: ROME
        / ITALY

ARAS: JEVREMOVIC, JELA NMN

BARS:

ARR:

COMMENTS: A027 CHANGED SEX FROM _ TO F FOR 35170088

                *****  INVESTIGATIONS  *****

CASE             STATUS            ADJUDICATION
OF179481         07/20/1995                          POS:
P9543352         CLOSED              00               PURGE DATE: 07/2010
                 CLOSED COMPLETE                      ACCT: 52309

FILE #:            ID:      DATE:                  IND:   TYPE:   CLASS:

SOI: 1800  SECURITY OFFICE
           OSIA
           301 4TH STREET SW
           ROOM 701

           WASHINGTON                      DC 2              DISC 2/22-1-05

IA-14A
(9-92)

**United States Information Agency**
OFFICE OF SECURITY
## REQUEST FOR SECURITY INFORMATION

DATE: 09/29/98

[X] FBI SUBV.    [X] FBI I.D.    [ ] INS    [ ] STATE    [X] OPM    [X] CIA    [X] CREDIT    [ ] OTHER

DO NOT WRITE ABOVE THIS LINE

| NAME | | DATE OF BIRTH | PLACE OF BIRTH |
|---|---|---|---|
| Jevremovic, Jela NMN | | 03/19/46 | Rome, Italy |

| NEE NAMES, ALIASES AND PSEUDONYMS | | SEX | MARITAL STATUS | NAME OF SPOUSE |
|---|---|---|---|---|
| | | F | | |

| CITIZENSHIP | ALIEN REGISTRATION NO. | SOCIAL SECURITY NO. |
|---|---|---|
| Italy | | 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 |

**RESIDENCE FOR THE PAST FIVE YEARS**

| DATES | NUMBER AND STREET | CITY | STATE |
|---|---|---|---|
| 04/98 to 09/98 | 8155 Cargill Ave, Apt. #44 | San Diego | CA 92122 |
| 01/96 to 04/98 | Souk Bunar 1 | Sacajevo, B+H | |
| 08/95 to 01/96 | Martievalhe | Zagreb, Croatia | |
| 03/95 to 08/95 | 101 7th Street, SE | Washington | DC 20003 |
| 09/94 to 02/95 | Marticevalye | Zagreb | |

**EMPLOYMENT FOR THE PAST FIVE YEARS**

| DATES | EMPLOYER | ADDRESS |
|---|---|---|
| 09/95 to 09/98 | International Management Group | M. Kantardric 3/II, Sarajevo |
| 04/92 to 08/95 | CBS Radio, New York NY | 524 West 57 Street, New York, NY |

ADDITIONAL IDENTIFYING DATA
54101

| REQUEST PLACED BY | DATE | THIS BLOCK TO BE USED FOR AGENCY RESPONSE |
|---|---|---|
| B/VOA/E | 09/29/98 | |

REQUESTING OFFICER
Debbie Heitzer: bsm

PERSON [ ] WILL HAVE ACCESS TO CLASSIFIED INFORMATION [ ] WILL NOT

PROPOSED USE OF PERSON: NAC, PI

[ ] NO RECORD    [ ] SECURITY INFO. ATTACHED

[ ] NO DEROG. INFO

RECEIVED    OCT 06 1998

DATE _____

| | | |
|---|---|---|
| USIA-A [2-82] | **'States Information Agency**<br>OFFICE OF SECURITY<br>**REQUEST FOR SECURITY INFORMATION** | DATE<br>09/29/98 |

[X] FBI SUBV.  [X] FBI I.D.  [ ] INS  [ ] STATE  [X] OPM  [X] CIA  [X] CREDIT  [ ] OTHER

**DO NOT WRITE ABOVE THIS LINE**

| Name | | DATE OF BIRTH | PLACE OF BIRTH |
|---|---|---|---|
| Jevremovic, Jela NMN | | 03/19/46 | Rome, Italy |

| TRUE NAMES, ALIASES AND PSEUDONYMS | SEX<br>F | MARITAL STATUS | NAME OF SPOUSE |
|---|---|---|---|

| CITIZENSHIP<br>Italy | ALIEN REGISTRATION NO. | SOCIAL SECURITY NO.<br>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 |
|---|---|---|

**RESIDENCE FOR THE PAST FIVE YEARS**

| DATES | NUMBER AND STREET | CITY | STATE |
|---|---|---|---|
| 04/98 to 09/98 | 8155 Cargill Ave, Apt. #44 | San Diego | CA 92122 |
| 01/96 to 04/98 | Souk Bunar 1 | Sacajevo, B+H | |
| 08/95 to 01/96 | Martievalhe | Zagreb, Croatia | |
| 03/95 to 08/95 | 101 7th Street, SE | Washington | DC 20003 |
| 09/94 to 02/95 | Marticevalye | Zagreb | |

**EMPLOYMENT FOR THE PAST FIVE YEARS**

| DATES | EMPLOYER | ADDRESS |
|---|---|---|
| 09/95 to 09/98 | International Management Group | M. Kantardric 3/II, Sarajevo |
| 04/92 to 08/95 | CBS Radio, New York NY | 524 West 57 Street, New York, NY |

NO RECORD

| ADDITIONAL IDENTIFYING DATA |
|---|
| 54101 |

| REQUEST PLACED BY<br>B/VOA/E | DATE<br>09/29/98 | THIS BLOCK TO BE USED FOR AGENCY RESPONSE |
|---|---|---|
| REQUESTING OFFICER<br>Debbie Heitzer: bsm | | [ ] NO RECORD    [ ] SECURITY INFO. ATTACHED |
| PERSON  [ ] WILL  [ ] WILL NOT  HAVE ACCESS TO CLASSIFIED INFORMATION | | [ ] NO. DEROG. INFO. |
| PROPOSED USE OF PERSON<br>NAC, PI | | DATE _____ |

# U.S. DISTRICT COURT
## FOR
## THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Jela JEVREMOVIC | * | |
| 4545 Connecticut Avenue N.W. | | |
| Apartment 711 | * | |
| Washington, D.C. 20008, | | |
|               Petitioner | * | |
| | | |
|       v. | * | Case: 1:07-cv-01278 RMB |
| | | |
| Michael CHERTOFF, Secretary | * | |
| U.S. Department of Homeland Security | | |
| 425 Murray Drive; Building 410 | * | |
| Washington, D.C. 20528, | | |
|               Respondent | * | |
| | | |
| Emilio T. GONZALEZ, Ph.D., Director | * | |
| U.S. Citizenship & Immigration Services | | |
| 20 Massachusetts Avenue N.W. | * | |
| Washington, D.C. 20529, | | |
|               Respondent | * | |
| | | |
| Robert S. MUELLER III, Director | * | |
| Federal Bureau of Investigation | | |
| 935 Pennsylvania Avenue N.W. | * | |
| Washington, D.C. 20525, | | |
|               Respondent | * | |

## ORDER

Having read the pleadings in this matter and having considered the ability of the Federal

Bureau of Investigation (FBI) and other agencies to conduct background investigations and

"name checks" expeditiously when required (particularly when that agency(ies) has/have

performed similar ones on Ms. Jevremovic in the past, it is this _____ day of _____, 2007

ORDERED

that Respondents' Motion to Dismiss Ms. Jevremovic's Petition for a Writ of Mandamus be, and hereby is, dismissed; and it is further

ORDERED

that Ms. Jevremovic's Petition be, and hereby, is granted; and it is further

ORDERED

that Respondents complete the background investigation and "name check" on Petitioner within 5 calendar days after entry of this Order; and it is further

ORDERED

that Respondents schedule a Citizenship Interview within 10 calendar days of the appropriate Order being entered, provided no derogatory information has been found, so as to avoid even the appearance of retaliation against Ms. Jevremovic; and it is further

ORDERED

that Respondents schedule a Naturalization Ceremony within 30 calendar days of the appropriate Order being entered, provided no derogatory information is found, so as to avoid even the appearance of retaliation against Ms. Jevremovic; and it is further

ORDERED

that Respondents pay all Ms. Jevremovic's reasonable attorney's fees and costs in accordance with the Equal Access to Justice Act (5 U.S.C. § 504; 28 U.S.C. § 2412) because Respondents' positions, particularly their Motion to Dismiss, were not substantially justified.

_____
Ricardo M. Urbina
U.S. District Judge

17

**CERTIFICATE OF SERVICE**

I hereby certify that, on October 9, 2007, I served electronically, through the Court's Electronic Case filing system, the U.S. Attorney for the District of Columbia, Jeffrey A. Taylor, located at 555 4th Street N.W.; Washington, D.C. 20530 with a true and correct copy of the foregoing Opposition, Order, and exhibits showing that the Petitioner had been fingerprinted and investigated by the Federal Bureau of Investigation.

Michael Springmann

18