## U.S. DISTRICT COURT
## FOR
## THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Jela JEVREMOVIC | * | |
| 4545 Connecticut Avenue N.W. | | |
| Apartment 711 | * | |
| Washington, D.C. 20008, | | |
| Petitioner | * | |
| | | |
| v. | * | Case: 1:07-cv-01278 RMB |
| | | |
| Michael CHERTOFF, Secretary | * | |
| U.S. Department of Homeland Security | | |
| 425 Murray Drive; Building 410 | * | |
| Washington, D.C. 20528, | | |
| Respondent | * | |
| | | |
| Emilio T. GONZALEZ, Ph.D., Director | * | |
| U.S. Citizenship & Immigration Services | | |
| 20 Massachusetts Avenue N.W. | * | |
| Washington, D.C. 20529, | | |
| Respondent | * | |
| | | |
| Robert S. MUELLER III, Director | * | |
| Federal Bureau of Investigation | | |
| 935 Pennsylvania Avenue N.W. | * | |
| Washington, D.C. 20525, | | |
| Respondent | * | |

## RESPONSE TO RESPONDENTS' EXPANDED MOTION TO DISMISS

1. In its expanded Motion to Dismiss, Respondents again attempt to divert this

Honorable Court's attention from the matter at hand, seeking to focus it on totally irrelevant

issues, rather than on their inability or unwillingness to do their jobs. It is a typical federal tactic,

premised on the mistaken belief that the Justice Department has more attorneys, money, and time

than any Plaintiff in the world.

2. Most egregiously, Respondents do not wish this Honorable Court to build on its own precedents. In Liu v. Novak, No. 07-263 (EGS), 2007 WL 2460425 (D.D.C.), August 30, 2007, Judge Emmet G. Sullivan of this District Court denied the federal government's Motion to Dismiss for want of subject matter jurisdiction in a delayed FBI name check, stating that

> [1] the Plaintiff in Liu [like Petitioner Jevremovic in the instant case] challenged the *absence* of a decision or action, rather than a decision or action itself; and [2] "...Congress' intent to limit federal jurisdiction must be 'clear and convincing' in order to preclude judicial review....There is a general presumption in favor of judicial review of administrative acts...there is the principle that statutory ambiguities in immigration laws are resolved in favor of immigrants....In light of all [these] principles, the Court concludes that...this Court's jurisdiction over plaintiff's claim [has not been eliminated]." (Id. at *6, emphasis added, citations omitted.)

The Court continued:

> The D.C. Circuit, however, allows review of agency inaction for certain types of claims...One type are claims that allege that "the pace of the agency decisional process lags unreasonably." Sierra Club v. Thomas, 828 F.2d 783, 784 (D.C. Cir. 1987). "In such cases, 'the statutory duty involved...does not specify what course of action shall be taken. Rather, regardless of what course it chooses, the agency is under a duty not to delay unreasonably in making that choice.." Id. Agencies most often bear this duty of timeliness as a result of the APA's broad prohibition against "unreasonable delay." Id. In addition, as discussed in Section II, *infra*, the D.C. Circuit has established a meaningful standard by which to judge agency inaction in cases such as this one. See Telecomms. Research & Actin Ctr. v. FCC, 750 F.2d 70, 80 (D.C. Cir. 1984). Therefore, the Court does have jurisdiction over plaintiff's APA claim that defendants have unreasonably delayed adjudicating his application. See Thomas, 828 F.2d at 794; Nat'l Wildlife Fed'n v. Browner, 127 F. 3d 1126, 1131 (D.C. Cir. 1997) (stating that plaintiff could challenge the EPA's unreasonable delay in making a discretionary decision under the APA.) FN3."

The foregoing decision in Liu is included as Attachment A to this Response.

3. Furthermore, Respondents have offered no proof, other than their own unsubstantiated (and questionable) word that an FBI name check has even been sought. More specifically, have

Respondents followed their own internal procedures for dealing with "Name Checks"?, i.e. did

- Respondent USCIS enter Petitioner Jevremovic into its CLAIMS4 mainframe data base?

- Respondent FBI's FBIQUERY system show "No Data" more than 90 days after the information had been entered into Respondent USCIS' CLAIMS4 database?

- USCIS Washington District Office in Merrifield, Va. verify that Petitioner Jevremovic's name had been included in its weekly report submitted to Headquarters?

- USCIS Washington District Office, if the name had not been included in the weekly report, notice the omission to Headquarters?

- USCIS Washington District Office resubmit the name check request to their Vermont Service Center point of contact?

4. The most flagrant example of Respondents' misdirection and blatant refusal to do their job is the two Affidavits by Carroll Cobb and John Wybenga. (See Respondents' Response dated October 19, 2007) Instead of investigating why the U.S. Citizenship and Immigration Services (USCIS) and the Federal Bureau of Investigation (FBI) delayed a simple name check, something that can and has been performed on Petitioner Jevremovic at least three (3) times in the recent past, Respondents spent an unknown amount of time "investigating" Ms. Jevremovic's level of security clearance and her job functions, all of which have been known to Respondents for the past five (5) years.

5. Respondents' most recent submission is aimed at concealing the fact that USCIS is attempting to use this Honorable Court to validate its discredited, inefficient, and wasteful internal operations. USCIS evidently doesn't want to move citizenship applicants through its hopelessly confused system and so works incredibly hard at doing nothing. More offensively,

USCIS has had provisions in place for years to expedite FBI name checks.  In a January 2005

Notice (see Attachment B "FBI Name Check Expedite Criteria"), Respondent USCIS asserted

that it could and would speed up Name Check Requests, giving as some of the reasons:

- ■   Military deployment
- ■   Age-out benefits (aging of children putting them into another, disfavored visa category)
- ■   Writ of Mandamus filed
- ■   Immigration Judge cases
- ■   Other compelling reasons

6. In February 2007, for unknown and unknowable reasons (presumably because

Respondent might have to do something about its desperately incompetent bureaucracy), USCIS

removed its previous provision to expedite name checks when a federal lawsuit is filed.

Respondent also dropped the provision to expedite name checks in Immigration Judge cases.

The new and more peculiar list has some rather strange additions, such as "loss of Social Security

benefits".  (See Attachment C "USCIS Update"dated February 20, 2007.)  The new list of

reasons for expediting name checks reads as follows:

- ■   Military deployment
- ■   Age-out cases
- ■   "Significant and compelling reasons"
- ■   Loss of Social Security benefits"

Who is to say that, next week, USCIS will produce yet another, entirely different list of reasons?

It should be noted that nowhere in any inventory of justifications do any of the Respondents

enumerate  "inordinate and unconscionable delay" as a basis for expediting a name check.

7.  Respondents evidently believe that "None of the Above" apply to Petitioner

Jevremovic.  Clearly from her Affidavit/CV (Attachment D), Ms. Jevremovic has lost substantial

sums of money and advancement into managerial ranks because Respondents will not act on her

required name check. Additionally, given the uncertain status of federal agency budgets, Ms. Jevremovic could well lose her livelihood if her employer VOA starts eliminating positions held by aliens. (See Attachment E, Affidavit by Edwin Warner). It is not far-fetched to consider here the premise that most people, with substantial mortgages and rent payments, are only two paychecks away from living on the street.

8. To justify its actions, USCIS invokes the long-discredited mantra of "National Security", claiming that the FBI name check ensures "that our immigration system is not used as a vehicle to harm our nation or its citizens." (See Attachment C "USCIS Update" and Joseph J. Trento's book "Prelude to Terror", Carroll & Graf, N.Y., 2005.) Jela Jevremovic, apparently unbeknownst to USCIS and the FBI, has been working for the federal government for the past five (5) years. Either Ms. Jevremovic is a threat to the United States and the FBI's previous three (3) name checks were failures, or Ms. Jevremovic is not a threat to the United States but the FBI doesn't trust its pervious three (3) name checks.

9. More offensively, USCIS doesn't even follow through on its puffed-up statements. The cited Update cited ends with some fine print: "USCIS is charged with...improving the delivery of immigration and citizenship services..." It hasn't done this for Petitioner Jevremovic and it certainly hasn't done this for another of the Undersigned's clients whose application for Permanent Residence keeps getting rejected because USCIS doesn't' follow its own public statements and internal policy. (See July 17 USCIS Press Release and the Undersigned's E-mail to the American Immigration Lawyers' Association, Attachment F.)

10. Throughout this case, Respondents have attempted to obfuscate the matter through a blizzard of case law from around the country from courts that apparently didn't understand the

citizenship process and were all too willing to give incompetent agencies the benefit of dubious doubt. The government has insisted in this case, as it has in numerous other cases, such as those involving individuals seized and sent abroad for torture, that no federal court has any jurisdiction over any executive agency for any reason whatsoever. To make it pellucidly clear to this Honorable Court, we will begin again to establish that the Petitioner Jevremovic has a right to have her citizenship application adjudicated within a reasonable time and that the government has a duty to do so. We will again demonstrate that this Honorable Court has subject matter jurisdiction over the instant case.

I. In Ajmal v. Mueller et al, 2007 U.S. Dist. Lexis 52046 (E.D. Pa. July 17, 2007), the court distinctly articulated that the government's claim of the court lacking subject matter jurisdiction because there was no statutory deadline for scheduling a citizenship examination was wrong. It said "The majority of courts considering the matter [delay of citizenship adjudication because of unconscionable delay in performing the required "name check] have held that the mere fact that no definitive deadline has been established for scheduling an examination does not mean that USCIS possesses 'unfettered discretion to relegate aliens to a state of limbo, leaving them there to languish indefinitely." Kaplan v. Chertoff, 481 F. Supp. 370, 399 (E.D. Pa. 2007); see also Yong Tang v. Chertoff, 2007 U.S. Dist. Lexis 46030, 2007 WL 1821690, at *7 (D. Mass. June 26, 2007); Yu v. Brown, 36 F. Supp. 2d 922, 933 (D.N.M. 1999); Liu Duan v. Zamberry, 2007 U.S. Dist. Lexis 12697, 2007 WL 626116, at *4 (W.D. Pa. Feb. 23, 2007. "To conclude otherwise would render meaningless the APA's directive that agencies resolve maters presented to them 'within a reasonable' time." 5 U.S.C. § 555(b).

II. The court continued, writing "Indeed, even in the absence of specific deadlines, the

USCIS has the duty to adjudicate applications for naturalization without unreasonable delay."

See Kaplan, 481 F. Supp. 2d at 399; [*6] Liu Duan, 2007 U.S. Dist. Lexis 12697, 2007 WL

626116, at *4; Damra v. Chertoff, 2006 U.S. Dist. Lexis 45563, 2006 WL 1786246, at *3 (N.D.

Ohio; June 23, 2006). ("It is well recognized that immigration officials have a duty to process

naturalization applications within a reasonable time frame."); Alkenani v. Barrows, 356 F. Supp.

2d 652, 656 (N.D. Tex. 2005) ("Although immigration officials are vested with broad discretion

in making the ultimate decision whether to grant or deny an application for naturalization, they

have a non-discretionary duty to process the application within a reasonable time.") "Similarly,

the FBI has a mandatory, non-discretionary duty to complete criminal background checks within

a reasonable period of time." See Kaplan, 481 F. Supp. 2d at 400. "Defendants cannot simply

choose not to adjudicate an application for naturalization." See Yong Tang, 2007 U.S. Dist.

Lexis 46030, WL 1821690, at *5 ("grant of adjustment of status is not legally required, but

adjudication of the application one way or the other certainly is.")

　　　III. In Anjum v. USCIS et al, 2007 U.S. Dist. Lexis 22685 (D. Ohio, March 28, 2007),

the U.S. District Court in Ohio dismissed the government's claim that it did not have subject

matter jurisdiction, stating, on the contrary, that the Mandamus Act (28 U.S.C. § 1361) provides

subject matter jurisdiction for the Plaintiff in that action. The court relied on "the well-reasoned"

analysis of Lazli v. United States Citizenship & Immigration Servs., 2007 U.S. Dist. Lexis

10713, (D. Ore., Feb. 12, 2007), 2007 WL 496351 (D. Ore. Feb. 12, 2007). In Lazli, the court

found that "Defendants have an implied duty to adjudicate naturalization applications...'within a

reasonable time." The Magistrate Judge found Defendants' failure to schedule an

interview...constitutes a failure to perform their duty to adjudicate...Lazli's Application for

Naturalization within a reasonable time." The court continued "Because Plaintiffs' have established Defendants' duty to adjudicate Plaintiffs'...Naturalization Application within a reasonable time is ministerial and so plainly prescribed as to be free from doubt for purposes of mandamus relief, the Court concludes Plaintiffs have also established Defendants' duty to adjudicate...Lazli's Application for Naturalization within a reasonable time is not a discretionary duty over which the Court lacks jurisdiction..."

IV.  Finding that it had jurisdiction, the court ordered the FBI to conclude Lazli's fingerprint and name check within three (3) months and also commanded USCIS to adjudicate Lazli's Application for Naturalization within four months.

V.  In Hanbali v. Chertoff et al, 2007 U.S. Dist. Lexis 65742 (D. Ohio, August 17, 2007), the court made perfectly clear that Plaintiff had "a clear and certain claim for relief. He [sought] adjudication of his application for naturalization. He [did] not request review of a particular agency decision nor for a adjudication without adequate background checks. He simply [requested] adjudication within a reasonable time." "CIS [had] a 'nondiscretionary, ministerial duty to act." Noting Alkenani v. Barrows, 356 F. Supp. 652, 656 (N.D. Tex. 2005), the court concluded that "Although immigration officials are vested with broad discretion in making the ultimate decision whether to grant or deny an application for naturalization, they have a non-discretionary duty to process the application within a reasonable time." There were no alternative administrative remedies. Therefore, the court concluded, the Mandamus Act and the Administrative Procedure Act give federal courts jurisdiction over delay of name checks and lags in adjudicating naturalization applications.

VI.  In Aman v. Gonzales et al, 2007 U.S. Dist. Lexis 66598 (D. Colo., September 10,

8

2007), the court reviewed the FBI's peculiar explanation that name checks were delayed by their increased use after September 11, 2001. It caustically observed, "First, the FBI can credibly blame the backlog created in the aftermath of September 11 for only so long...Second, despite Defendants' suggestions to the contrary, I fail to see how the fact that Congress has set a sixty-day deadline by which the FBI must complete certain *security clearances for government employees* can be read to evince Congress' clear intent that the FBI never be subjected to deadlines with respect to background checks of prospective citizens. (See <u>Shalabi v. Gonzales</u>, 2006 U.S. Dist. Lexis 77096 at *14-15). The court then ordered the FBI to complete the Plaintiff's security check within 60 days and commanded the USCIS to issue a declaration on the Plaintiff's pending naturalization application within 30 days of the results of the FBI name check. Likewise, in <u>Ibrahim v. Gonzales et al</u>, 2007 U.S. Dist. Lexis 77641 (Oct. 18, 2007), the District Court judge ordered the FBI to complete the Plaintiff's background security check (pending for two [2] years) and report the results to USCIS within 60 days of the date of the order and instructed USCIS to issue a decision on Plaintiff's pending naturalization application within 30 days of receipt of the FBI's security check.

THEREFORE, Petitioner Jevremovic prays this Honorable Court to

1. Order Respondents to complete a "name check" within 30 calendar days of the appropriate Order being signed;

2. Order Respondents to schedule a Citizenship Interview within 45 calendar days of the appropriate Order being signed, if no derogatory information is found;

3. Order Respondents to schedule a Naturalization Ceremony within 60 calendar days of the appropriate Order being signed, if no derogatory information is found;

4. Award reasonable attorney's fees and costs in accordance with the Equal Access to Justice Act (5 U.S.C. § 504; 28 U.S.C. § 2412) because Respondents' positions were not substantially justified;

5. And grant such other and further relief as this Honorable Court, in its wisdom, deems just and appropriate.

Date: November 6, 2007                    Respectfully submitted,

                                          Jela Jevremovic

                                          By Counsel,

                                          J. Michael Springmann
                                          Law Office of J. Michael Springmann PLLC
                                          4619 Yuma Street N.W.
                                          Washington, D.C. 20016
                                          Tel. (202) 686-4869
                                          Fax (202) 966-1254
                                          E-Mail: springmannslaw@fcc.net
                                          U.S. District Court Bar No. 465099

10

# U.S. DISTRICT COURT
## FOR
## THE DISTRICT OF COLUMBIA

Jela JEVREMOVIC                              *
4545 Connecticut Avenue N.W.
Apartment 711                               *
Washington, D.C. 20008,
               Petitioner              *

      v.                                    *    Case: 1:07-cv-01278 RMB

Michael CHERTOFF, Secretary                 *
U.S. Department of Homeland Security
425 Murray Drive; Building 410              *
Washington, D.C. 20528,
               Respondent             *

Emilio T. GONZALEZ, Ph.D., Director         *
U.S. Citizenship & Immigration Services
20 Massachusetts Avenue N.W.                *
Washington, D.C. 20529,
               Respondent             *

Robert S. MUELLER III, Director             *
Federal Bureau of Investigation
935 Pennsylvania Avenue N.W.                 *
Washington, D.C. 20525,
               Respondent             *

## ORDER

    Having read the pleadings in this matter and having considered the ability of the Federal

Bureau of Investigation (FBI) and other agencies to conduct background investigations and

"name checks" expeditiously when required (particularly when that agency(ies) has/have

performed similar ones on Ms. Jevremovic in the past, it is this _____ day of _____, 2007

ORDERED

that Respondents' Motion to Dismiss Ms. Jevremovic's Petition for a Writ of Mandamus be, and hereby is, dismissed; and it is further

ORDERED

that Ms. Jevremovic's Petition be, and hereby, is granted; and it is further

ORDERED

that Respondents complete the background investigation and "name check" on Petitioner within 30 calendar days after entry of this Order; and it is further

ORDERED

that Respondents schedule a Citizenship Interview within 45 calendar days of the appropriate Order being entered, provided no derogatory information has been found, so as to avoid even the appearance of retaliation against Ms. Jevremovic; and it is further

ORDERED

that Respondents schedule a Naturalization Ceremony within 60 calendar days of the appropriate Order being entered, provided no derogatory information is found, so as to avoid even the appearance of retaliation against Ms. Jevremovic; and it is further

ORDERED

that Respondents pay all Ms. Jevremovic's reasonable attorney's fees and costs in accordance with the Equal Access to Justice Act (5 U.S.C. § 504; 28 U.S.C. § 2412) because Respondents' positions were not substantially justified.

_____

Ricardo M. Urbina
U.S. District Judge

## CERTIFICATE OF SERVICE

I hereby certify that, on November 6, 2007, I served electronically, through the Court's Electronic Case filing system, the U.S. Attorney for the District of Columbia, Jeffrey A. Taylor, located at 555 4th Street N.W.; Washington, D.C. 20530 with a true and correct copy of the foregoing Response, Order, and Attachments.

J. Michael Springmann

13

# ATTACHMENT A

# LIU v. NOVAK

Westlaw.

--- F.Supp.2d ----
--- F.Supp.2d ----, 2007 WL 2460425 (D.D.C.)
**(Cite as: --- F.Supp.2d ----)**

Page 1

**C**
Liu v. Novak
D.D.C.,2007.
Only the Westlaw citation is currently available.
United States District Court,District of Columbia.
Zaigang LIU, Plaintiff,
v.
Paul NOVAK, et al., Defendants.
**Civil Action No. 07-263 (EGS).**

Aug. 30, 2007.

**Background:** Alien, a Chinese national, brought action to compel United States Citizenship and Immigration Services (USCIS) to adjudicate his application for adjustment of immigration status. Government moved to dismiss and alien cross-moved for summary judgment.

**Holdings:** The District Court, Emmet G. Sullivan, J., held that:

(1) statute stripping courts of jurisdiction to review "any other decision or action" that was committed to discretion of USCIS did not bar judicial review in alien's action, and

(2) four-year delay in adjudication of alien's application was unreasonable.

Plaintiff's motion granted and defendants' motion denied.

**[1] Federal Courts 170B €⇒34**

170B Federal Courts
    170BI Jurisdiction and Powers in General
        170BI(A) In General
            170Bk29 Objections to Jurisdiction, Determination and Waiver
            170Bk34 k. Presumptions and Burden of Proof. Most Cited Cases
In evaluating a motion to dismiss for lack of subject-matter jurisdiction, court must accept the complaint's well-pled factual allegations as true and construe all reasonable inferences in the plaintiff's

favor; the court is not required, however, to accept inferences unsupported by the facts alleged or legal conclusions that are cast as factual allegations. Fed.Rules Civ.Proc.Rule 12(b)(1), 28 U.S.C.A.

**[2] Federal Civil Procedure 170A €⇒673**

170A Federal Civil Procedure
    170AVII Pleadings and Motions
        170AVII(B) Complaint
            170AVII(B)1 In General
                170Ak673 k. Claim for Relief in General. Most Cited Cases
A complaint is legally sufficient if it presents enough facts to state a claim to relief that is plausible on its face, and above the speculative level. Fed.Rules Civ.Proc.Rule 12(b)(6), 28 U.S.C.A.

**[3] Aliens, Immigration, and Citizenship 24 €⇒385**

24 Aliens, Immigration, and Citizenship
    24V Denial of Admission and Removal
        24V(G) Judicial Review or Intervention
            24k385 k. Jurisdiction and Venue. Most Cited Cases
Statute stripping courts of jurisdiction to review "any other decision or action" that was committed to discretion of United States Citizenship and Immigration Services (USCIS) did not bar judicial review in suit seeking order compelling action on alien's application for adjustment of status; alien was challenging the absence of a decision or action, rather than a decision or action, pace of application processing was not a discretionary decision the authority for which was specified by the statute, and all applicable presumptions were in favor of finding jurisdiction over alien's claim. REAL ID Act of 2005, §§ 101(e, f), 106(a), 8 U.S.C.A. § 1252(a)(2)(B)(ii).

**[4] Aliens, Immigration, and Citizenship 24 €⇒385**

24 Aliens, Immigration, and Citizenship
    24V Denial of Admission and Removal

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----
Page 2
--- F.Supp.2d ----, 2007 WL 2460425 (D.D.C.)

**(Cite as: — F.Supp.2d —)**

24V(G) Judicial Review or Intervention
      24k385 k. Jurisdiction and Venue. Most Cited Cases

Statutory provision stripping courts of jurisdiction to hear "any cause or claim ... arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders" did not strip district court of jurisdiction to consider alien's suit seeking order compelling government to adjudicate his application for adjustment of status; alien's case did not involve any of the explicitly mentioned steps in the deportation process, or any aspect of the deportation process at all. REAL ID Act of 2005, §§ 101(e, f), 106(a), 8 U.S.C.A. § 1252(g).

**[5] Aliens, Immigration, and Citizenship 24 ☞ 385**

24 Aliens, Immigration, and Citizenship
  24V Denial of Admission and Removal
    24V(G) Judicial Review or Intervention
      24k385 k. Jurisdiction and Venue. Most Cited Cases

Statute providing for district court jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States," in combination with the Administrative Procedure Act (APA), vested district court with jurisdiction to compel government to adjudicate alien's application for adjustment of status, where such adjudication was unreasonably delayed or withheld. 5 U.S.C.A. § 706(1); 28 U.S.C.A. § 1331.

**[6] Federal Courts 170B ☞ 192**

170B Federal Courts
  170BIII Federal Question Jurisdiction
    170BIII(C) Cases Arising Under Laws of the United States
      170Bk192 k. Particular Cases and Questions. Most Cited Cases

Administrative Procedure Act (APA) does not independently provide a basis for the existence of subject matter jurisdiction. 5 U.S.C.A. § 551 et seq.

**[7] Aliens, Immigration, and Citizenship 24 ☞ 332**

24 Aliens, Immigration, and Citizenship
  24V Denial of Admission and Removal
    24V(E) Administrative Procedure
      24k332 k. Time Limitations in General. Most Cited Cases

Given the absence of any explanation for the delay in alien's name-check, which was government's proffered reason for delay in adjudicating alien's application for adjustment of status, four-year delay in that adjudication was unreasonable under the Administrative Procedure Act (APA), warranting issuance of order compelling agency action; alien was being denied the benefits of permanent resident status, and government failed to provide information that would allow a finding that its interests outweighed those of alien. 5 U.S.C.A. § 706(1); Immigration and Nationality Act, § 245(a), 8 U.S.C.A. § 1255(a).

Thomas A. Elliot, Elliot & Mayock, Washington, DC, for Plaintiff.
Alexander Daniel Shoaibi, U.S. Attorney's Office, Washington, DC, for Defendants.

EMMET G. SULLIVAN, District Judge.
*1 Plaintiff, Zaigang Liu, filed this suit seeking to compel the federal government defendants to adjudicate his application for adjustment of immigration status. Plaintiff submitted his application for adjustment to obtain lawful permanent resident status on July 23, 2003, and his application has not yet been adjudicated. Pending before the Court are defendants' motion to dismiss the complaint for lack of subject matter jurisdiction and failure to state a claim and plaintiff's motion for summary judgment. Upon consideration of the motions and supporting memoranda, the responses and replies thereto, the applicable law, and the entire record, the Court determines that it has jurisdiction over plaintiff's claim under the Administrative Procedures Act ("APA") and that adjudication of plaintiff's application has been unreasonably delayed. Therefore, for the reasons stated herein, plaintiff's motion for summary judgment is **GRANTED**, and defendants' motion to dismiss the complaint is **DENIED**.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----

--- F.Supp.2d ----, 2007 WL 2460425 (D.D.C.)

**(Cite as: --- F.Supp.2d ----)**

Plaintiff, Zaigang Liu, is a Chinese national lawfully residing in the United States. On July 23, 2003, plaintiff filed an application for adjustment of status to lawful permanent resident as a derivative beneficiary of his spouse, Lu Zhang. Defendant Paul Novak is the District Director of the Vermont Service Center of the United States Department of Homeland Security. Plaintiff's application was filed with defendant Novak's office and the office retains jurisdiction over the application. Defendant Emilio Gonzalez is the Director of the United States Citizenship and Immigration Services ("USCIS"). The USCIS is assigned the adjudication of immigrant visa petitions as well as applications for permanent residence status. Defendant Robert S. Mueller, III, is the Director of the Federal Bureau of Investigation ("FBI"). The FBI is responsible for security clearance investigations with regard to status adjustment applications.

Plaintiff is eligible for an adjustment of status as a derivative beneficiary of an approved Immigrant Petition for Alien Worker and Application for Adjustment of Status to lawful permanent resident filed by his spouse. Plaintiff's spouse's application for adjustment was approved by the USCIS on November 23, 2004. Plaintiff has complied with all requests made by the USCIS in order to complete all necessary biometric appointments for security clearances. In addition, plaintiff has provided all information requested by the agency and has complied with all appointment notices. Nonetheless, on May 21, 2006, plaintiff was informed that his application's adjudication was delayed because of the absence of the required security background checks. This security background check includes an FBI name check. Defendants contend that FBI name checks are detailed processes, and although the vast majority clear quickly, FBI name checks can remain pending for long periods of time.

More than three years after plaintiff filed his application for adjustment, plaintiff had still not received any decision. Accordingly, on February 5, 2007, plaintiff filed a complaint in this Court asserting both mandamus jurisdiction and federal question jurisdiction in combination with the APA.

Plaintiff seeks to compel defendants to adjudicate his application for adjustment, though he does not ask the Court to compel a status adjustment favorable to him.

*2 In response to plaintiff's complaint, defendants filed a motion to dismiss for lack of subject matter jurisdiction and failure to state a claim. With regard to jurisdiction, defendants assert that: (1) this Court lacks jurisdiction over plaintiff's claim under two provisions of the immigration law; (2) mandamus is inappropriate because defendants do not owe plaintiffs a non-discretionary duty; and (3) federal question jurisdiction under the APA is inappropriate because adjustment of status is discretionary and thus unreviewable by courts. With regard to the merits, defendants assert that although plaintiff requests immediate adjudication of his application, there is no statutory basis warranting such relief.

Plaintiff filed a motion for summary judgment in addition to an opposition to defendants' motion to dismiss. Plaintiff asserts that: (1) this Court has jurisdiction under the APA or through mandamus; and (2) pursuant to the APA, not only has plaintiff stated a valid claim, but plaintiff is entitled to judgment as a matter of law because defendants failed to adjudicate his application within a reasonable time. Defendants filed a reply that addressed the jurisdictional issues, but failed to address plaintiff's argument that adjudication of the application has been unreasonably delayed.

[1] A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure tests whether the court has subject matter jurisdiction over the action. *Bernard v. U.S. Dep't Of Def.*, 362 F.Supp.2d 272, 277 (D.D.C.2005). The plaintiff bears the burden of establishing that the court has subject matter jurisdiction. *Rann v. Chao*, 154 F.Supp.2d 61, 64 (D.D.C.2001). In evaluating a motion to dismiss for lack of subject-matter jurisdiction, the court must accept the complaint's well-pled factual allegations as true and construe all reasonable inferences in the plaintiff's favor. *Thompson v. The Capitol Police Bd.*, 120 F.Supp.2d 78, 81 (D.D.C.2000)."The court

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

is not required, however, to accept inferences unsupported by the facts alleged or legal conclusions that are cast as factual allegations."*Rann*, 154 F.Supp.2d at 64 (citations omitted). In determining whether the plaintiff has met his burden, the Court may look to materials beyond the pleadings. *Bernard*, 362 F.Supp.2d at 277 (citing *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C.Cir.1992)).

[2] A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C.Cir.2002). A complaint must present "enough facts to state a claim to relief that is plausible on its face," and "above the speculative level." *Bell Atlantic Corp. v. Twombly*, --- U.S. ----, 127 S.Ct. 1955, 1965, 1974, 167 L.Ed.2d 929 (2007). The Court will accept as true all factual allegations in the complaint, and give the plaintiff the benefit of all inferences that can be drawn from the facts alleged. *See id.* at 1965;*Atchinson v. Dist. of Columbia*, 73 F.3d 418, 422 (D.C.Cir.1996).

*3 Summary judgment should be granted only if the moving party has shown that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Waterhouse v. Dist. of Columbia*, 298 F.3d 989, 991 (D.C.Cir.2002). In determining whether a genuine issue of material fact exists, the Court must view all facts in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The non-moving party's opposition, however, must consist of more than mere unsupported allegations or denials and must be supported by affidavits or other competent evidence setting forth specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); *see Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. 2548.

### I. Jurisdiction

Defendants contend that this Court has been

stripped of jurisdiction over plaintiff's claim by two provisions, 8 U.S.C. § 1252(a)(2)(B)(ii) and 8 U.S.C. § 1252(g). In the alternative, defendants contend that the Court does not have jurisdiction over plaintiff's APA claim because it concerns matters committed to agency discretion and does not have jurisdiction over plaintiff's mandamus claim because defendants do not owe plaintiff a clear, non-discretionary duty.

### A. 8 U.S.C. § 1252(a)(2)(B)(ii)

Section 242 of the Immigration and Nationality Act, as amended by the REAL ID Act of 2005, states:
[n]otwithstanding any other provision of law (statutory or nonstatutory), ... and except as provided in subparagraph (D), and regardless of whether the judgment, decision, or action is made in removal proceedings, no court shall have jurisdiction to review ...
(ii) any ...*decision or action* of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be *in the discretion* of the Attorney General or the Secretary of Homeland Security.

8 U.S.C. § 1252(a)(2)(B)(ii) (emphasis added). Pursuant to 8 U.S.C. § 1255, an alien's status "may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence."8 U.S.C. § 1255(a). Although it is clear that the decision to grant or deny an adjustment application is "wholly discretionary," *Kim v. Ashcroft*, 340 F.Supp.2d 384, 389 (S.D.N.Y.2004), and therefore barred from judicial review, it is a disputed question among courts as to whether section 1252(a)(2)(B)(ii) also bars a court from reviewing the failure to make or delay in making an adjustment decision.

Several district courts have dismissed claims similar to plaintiff's for lack of subject matter jurisdiction, holding that § 1252(a)(2)(B)(ii) bars judicial review of the overall process leading up to and including the grant or denial of an adjustment applic-

ation. For example, in *Safadi v. Howard*, 466 F.Supp.2d 696 (E.D.Va.2006), after waiting more than three years for a decision on his adjustment application, the plaintiff filed a mandamus action requesting that the court compel USCIS to adjudicate his application. *Id.* at 697.The court, however, held that it did not have jurisdiction to review the plaintiff's complaint pursuant to 8 U.S.C. § 1252(a)(2)(B)(ii).*Id.* The court stated that § 1252(a)(2)(B)(ii) clearly and unambiguously precluded courts from "reviewing any discretionary decision or action of USCIS."*Id.* at 698.Accordingly, as the court noted, "[t]he question ... is whether subsection (ii)'s exclusion of any discretionary 'action' from judicial review serves to preclude judicial review of the pace or nature of the process USCIS has implemented to execute its discretionary authority to adjust plaintiff's status." *Id.* The court reasoned that "[t]he plain meaning of the word 'action' answers this question; it means 'an act of series of acts.'"*Id.* at 699 (citing Black's Law Dictionary 28 (6th ed.1990)). Under § 1252(a)(2)(B)(ii) then, the term "action" "encompasses the entire process of reviewing an adjustment application, including the completion of background and security checks and the pace at which the process proceeds."*Id.* at 699.Thus, the court rejected the plaintiff's argument that the phrase "decision or action" only applied to the actual results of adjudications, and dismissed plaintiff's complaint for lack of jurisdiction. *Id.* at 699-701.

**\*4** Other district courts have similarly held that they lacked jurisdiction to hear claims brought by plaintiffs because § 1252(a)(2)(B)(ii) includes delays in the adjustment process. *See, e.g., Grinberg v. Swacina*, 478 F.Supp.2d 1350, 1353-54 (S.D.Fla.2007) (holding that *Safadi's* reasoning applied to the plaintiff's case and dismissal for lack of jurisdiction was proper); *Zheng v. Reno*, 166 F.Supp.2d 875, 880 (S.D.N.Y.2001) (reasoning that the adjustment process is "wholly discretionary," and therefore that plaintiff's mandamus complaint must be dismissed as relief is "unavailable for delays in the adjustment process"); *Mustafa v. Pasquerell*, 2006 WL 488399, at \*5 (W.D.Tex.2006) (holding mandamus complaint

seeking adjudication of adjustment application must be dismissed for lack of subject matter jurisdiction).

On the other hand, there is also significant district court authority holding that § 1252(a)(B)(2)(ii) does not bar judicial review of the pace of application processing or the failure to take action. For example, in *Duan v. Zamberry*, No. 06-1351, 2007 WL 626116 (W.D.Pa. Feb.23, 2007), the court first explained that 8 U.S.C. § 1252(a)(2)(B)(ii) "is to be read narrowly." *Id.* at \*2 (citing *Prado v. Reno*, 198 F.3d 286, 290 (1st Cir.1999)). The court then noted that "as a general matter, there is a 'strong presumption in favor of judicial review of administrative action.'"*Id.* (quoting *INS v. St. Cyr*, 533 U.S. 289, 298, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001)). Under these guiding principles, the court held that § 1252(a)(2)(B)(ii) did not strip it of jurisdiction because "[t]he subchapter at issue [referred to in § 1252(a)(2)(B)(ii) ] specifies only that it is within the discretion of the Attorney General to adjust one's status; it does not address, much less specify any discretion associated with, the pace of application processing."*Id.* Accordingly, § 1252(a)(2)(B)(ii) is limited to results of adjudications and does not include "the pace of application processing." *Id.* In addition, the court specifically referenced the *Safadi* decision and found that its logic with regard to § 1252(a)(2)(B)(ii) would "render toothless all timing restraints, including those imposed by the APA ... [and s]uch a result would amount to a grant of permission for inaction, and a purposeful disregard of the potential for abuse thereof, on immigration matters."*Id.* at \*3.

Other district courts have followed a similar line of reasoning as *Duan*, holding that they were not divested of jurisdiction by § 1252(a)(2)(B)(ii).*See, e.g., Batista v. INS*, 2000 WL 204535, at \*2 (S.D.N.Y. Feb.22, 2000) (holding that § 1252(a)(2)(B)(ii) did not apply because the plaintiff's complaint "does not concern ... a decision or action, but rather the Attorney General's failure to make a decision or to take an action at a pace acceptable to plaintiffs"); *see also Elmalky v. Upchurch*, 2007 WL 944330, at \*5 (N.D.Tex. Mar.28, 2007) (reasoning that § 1255(a) does not

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----
Page 6
--- F.Supp.2d ----, 2007 WL 2460425 (D.D.C.)
(Cite as: --- F.Supp.2d ----)

specifically commit the "process" of adjusting an application to the Attorney General and holding that § 1252(a)(2)(B)(ii) does not strip the court of jurisdiction); *Kim,* 340 F.Supp.2d at 389 (reasoning that although the decision to grant or deny an adjustment application is "wholly discretionary," "[w]hether to adjudicate an adjustment application is not discretionary, but governed by section 6 of the APA").

*5 [3] Having considered the arguments on both sides of the issue, the Court is persuaded for three reasons that § 1252(a)(2)(B)(ii) is not a bar to jurisdiction over plaintiff's claim. First, the provision only applies to jurisdiction to review a "decision or action" of the Department of Homeland Security. In this case, plaintiff is challenging the absence of a decision or action, specifically the failure to adjudicate his application. Review over the lack of action is not barred. *See Nyaga v. Ashcroft,* 186 F.Supp.2d 1244, 1252 (N.D.Ga.2002) ("Plaintiff is not seeking a review of a decision or action, which would be barred, but is seeking remediation of the lack of action, which is not barred.") *rev'd on other grounds by* 323 F.3d 906 (11th Cir.2003); *Paunescu v. INS,* 76 F.Supp.2d 896, 900 (N.D.Ill.1999) ("Plaintiffs do not ask this court to 'review' a governmental action, but to examine and rectify a gross inaction."). As the Seventh Circuit has indicated, by the use of the terms "decision or action," § 1252(a)(2)(B)(ii) only bars review of actual discretionary decisions, not the failure to render a decision. *See Iddir v. INS,* 301 F.3d 492, 497-98 (7th Cir.2002) (citing *Nyaga* and *Paunescu* with approval).

The Court is not persuaded by the "plain meaning" argument in *Safadi,* clever though it may be. The court in *Safadi* artfully made the argument that the inaction at issue here is in fact a series of unspecified, affirmative, discretionary actions. 466 F.Supp.2d at 699.Plaintiff, however, is not challenging any of those discrete actions, and the government has not even specified what steps it has taken in processing plaintiff's particular application.[FN2]Moreover, the argument in *Safadi* essentially finds that inaction is within the "plain meaning" of action. The established body of administrative law though, distinguishes between the two. *See Sierra Club v. Thomas,* 828 F.2d 783, 793 (D.C.Cir.1987) ("inaction represents action that has been unlawfully withheld"). For instance, the APA relies on this distinction in 5 U.S.C. § 706, as subsection (1) remedies unlawful agency inaction and subsection (2) remedies unlawful agency action. As action and inaction are distinct, and § 1252(a)(2)(B)(ii) by its plain terms only covers the former, the provision does not apply to plaintiff's claim.

Second, § 1252(a)(2)(B)(ii) does not apply to all discretionary decisions, but only those decisions "the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security."Therefore, the provision only applies to the "narrower category of decisions where Congress has taken the additional step to specify that the sole authority for the action is in the Attorney General's discretion."*Alaka v. Attorney Gen. of U.S.,* 456 F.3d 88, 95 (3d Cir.2006); *see Spencer Enters., Inc. v. United States,* 345 F.3d 683, 690 (9th Cir.2003) (holding that the provision only bars review of "matters of pure discretion, rather than discretion guided by legal standards"); *see also Zhu v. Gonzales,* 411 F.3d 292, 295 (D.C.Cir.2005) (declining to decide how discretionary a decision must be to be barred from review). Within the subchapter referred to, Congress specified that the ultimate decision of whether an immigrant's status is "adjusted" lies with the "Attorney General, in his discretion." 8 U.S.C. § 1255(a). The subchapter, however, "does not address, much less specify any discretion associated with, the pace of application processing."*Duan,* 2007 WL 626116, at *2. Thus, plaintiff's claim is not barred by § 1252(a)(2)(B)(ii) for this reason as well.

*6 Finally, recognizing that reasonable jurists may differ in resolving these questions of statutory interpretation, the Court relies on the applicable presumptions, all of which are in favor of finding jurisdiction over plaintiff's claim. First, Congress's intent to limit federal jurisdiction must be "clear and

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

convincing" in order to preclude judicial review. *See Bd. of Governors of the Fed. Reserve Sys. v. MCorp. Fin., Inc.,* 502 U.S. 32, 44, 112 S.Ct. 459, 116 L.Ed.2d 358 (1991). Second, there is a general presumption in favor of judicial review of administrative acts. *See INS v. St. Cyr,* 533 U.S. 289, 298, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001). Third, there is the principle that statutory ambiguities in immigration laws are resolved in favor of immigrants. *See INS v. Cardoza-Fonseca,* 480 U.S. 421, 449, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987). In light of all three principles, the Court concludes that § 1252(a)(2)(B)(ii) does not eliminate this Court's jurisdiction over plaintiff's claim.

### B. 1252(g)

Defendants contend this provision bars jurisdiction over plaintiff's claim because Congress intended to prevent any interference with the prioritizing and adjudication of any immigration case. Defendants' contention, however, ignores the statute's language and Supreme Court precedent.

[4] The provision states, in relevant part, "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter."8 U.S.C. § 1252(g). The Supreme Court in *Reno v. American-Arab Anti-Discrimination Committee,* 525 U.S. 471, 119 S.Ct. 936, 142 L.Ed.2d 940 (1999), held that § 1252(g) applies narrowly to the Attorney General's decision to "commence proceedings, adjudicate cases, or execute removal orders."*Id.* at 482, 119 S.Ct. 936.The Court stated that "[i]t is implausible that the mention of three discrete events along the road to deportation was a shorthand way of referring to all claims arising from deportation proceedings."*Id.* Thus, it is even less plausible that the mention of these discrete deportation-related events was a shorthand way of referring to all claims brought in immigration matters. *See Paunescu v. INS,* 76 F.Supp.2d 896, 899 (N.D.Ill.1999). Because this case does not involve any of the explicitly mentioned steps in the deporta-

tion process, or any aspect of the deportation process at all, § 1252(g) does not apply to plaintiff's claim. *See Reno,* 525 U.S. at 482, 119 S.Ct. 936;*Paunescu,* 76 F.Supp.2d at 899.

### C. 28 U.S.C. § 1331 and the APA

Under the APA, "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review."5 U.S.C. § 704. An agency has a duty to conclude a matter presented to it within a "reasonable time." *Id.* § 555(b). Accordingly, the scope of judicial review includes "compel[ling] agency action unlawfully withheld or unreasonably delayed."*Id.*§ 706(1); *see also Brock v. Pierce County,* 476 U.S. 253, 260 n. 7, 106 S.Ct. 1834, 90 L.Ed.2d 248 (1986) (noting that the APA gives district courts the authority to "compel agency action unlawfully withheld or unreasonably delayed") (citing 5 U.S.C. § 706(1)).

*7 [5][6] The APA does not independently provide a basis for the existence of subject matter jurisdiction. *Califano v. Sanders,* 430 U.S. 99, 107, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977). Pursuant to 28 U.S.C. § 1331 though, a federal district court has jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States."28 U.S.C. § 1331. Accordingly, 28 U.S.C. § 1331 in combination with the APA, vests the court with jurisdiction to compel agency action that is unreasonably delayed or withheld. *See Mashpee Wampanoag Tribal Council, Inc. v. Norton,* 336 F.3d 1094, 1099-1100 (D.C.Cir.2003) ("the district court had jurisdiction under 28 U.S.C. § 1331... to determine whether the [agency] was in violation of § 555(b), and, if it was, to issue an appropriate order pursuant to § 706.").

The APA, however, precludes judicial review to the extent "agency action is committed to agency discretion by law."5 U.S.C. § 701(a)(2). Defendants contend that because adjustment of status decisions are committed to the discretion of the Attorney General, *see*8 U.S.C. 1255(a), plaintiff's unreasonable delay claim cannot be brought under the APA.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Defendants rely upon _Heckler v. Chaney_, 470 U.S. 821, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985), where the Supreme Court construed § 701(a)(2) to create a presumption against reviewability for "an agency's decision not to take enforcement action."_Id._ at 832, 105 S.Ct. 1649.The Court stated that "review is not to be had if the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion."_Id._ at 830, 105 S.Ct. 1649.Chaney has thus been "interpreted to create a presumption against the review of agency inaction."_Alliance To Save The Mattaponi v. U.S. Army Corps of Eng'rs._ No. 06-1268, 2007 WL 1576317, at *5 (D.D.C.2007).

The D.C. Circuit, however, allows review of agency inaction for certain types of claims. _See id._One type are claims that allege that "the pace of the agency decisional process lags unreasonably."_Sierra Club v. Thomas_, 828 F.2d 783, 794 (D.C.Cir.1987). In such cases, "the statutory duty involved ... does not specify what course of action shall be taken. Rather, regardless of what course it chooses, the agency is under a duty not to delay unreasonably in making that choice."_Id._ Agencies most often bear this duty of timeliness as a result of the APA's broad prohibition against "unreasonable delay." _Id._ (citing 5 U.S.C. §§ 555(b), 706(1)). In addition, as discussed in Section II, _infra_, the D.C. Circuit has established a meaningful standard by which to judge agency inaction in cases such as this one. _See Telecomms. Research & Action Ctr. v. FCC_, 750 F.2d 70, 80 (D.C.Cir.1984). Therefore, the Court does have jurisdiction over plaintiff's APA claim that defendants have unreasonably delayed adjudicating his application. _See Thomas_, 828 F.2d at 794;_Nat'l Wildlife Fed'n v. Browner_, 127 F.3d 1126, 1131 (D.C.Cir.1997) (stating that plaintiff could challenge the EPA's unreasonable delay in making a discretionary decision under the APA).[FN3]

## II. Merits of the APA Claim

*8 On the merits, defendants move to dismiss plaintiff's APA claim for failure to state a claim. Defendants summarily argue that plaintiff's factual

allegations do not demonstrate an unreasonable delay, though they have not provided any specific explanations for why the delay for plaintiff to date has been reasonable. Plaintiff contends that he has stated a valid APA claim, and that on the undisputed facts, the Court should find the defendants' delay unreasonable and grant his motion for summary judgment.

The D.C. Circuit in _Telecommunications Research & Action Center v. FCC_, 750 F.2d 70 (D.C.Cir.1984) identified six factors ("TRAC" factors) relevant to determining whether agency delay is unreasonable:

(1) the time agencies take to make decisions must be governed by a "rule of reason"; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not "find any impropriety lurking behind agency lassitude in order to hold that agency action is 'unreasonably delayed.' "

[7]_Id._ at 80 (citations omitted). With regard to the first TRAC factor, plaintiff's application has been pending for over four years, which plaintiff argues exceeds the rule of reason.[FN4]Defendants' explanation for the delay is that the FBI name check has not been completed for plaintiff. The factual background provided by defendants with their motion generally describes the name check process, but fails to explain what the average or expected processing times are, or why plaintiff's particular name check has not been processed. Defendants had an opportunity to submit additional information or argument in their opposition to plaintiff's motion, but failed to do so. As defendants have described the name check process as one where data is primarily retrieved from an electronic database, and only oc-

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

casionally from paper records, it does not seem reasonable to the Court that this process would take over four years to complete.

In the absence of more detailed information from the agency to explain the delay in plaintiff's name check, the Court will look to other unreasonable-delay cases involving adjustment applications. Federal courts have held that delays as long as four years are unreasonable for immigrant status adjustment applications. *See, e.g., Singh v. Still,* 470 F.Supp.2d 1064, 1071 (N.D.Cal.2007) (holding four-year delay was not reasonable); *Haidari v. Frazier,* No. 06-3215, 2006 WL 3544922, at *6 (D.Minn. Dec.8, 2006) (holding four-year delay was not reasonable due to FBI name checks); *Yu v. Brown,* 36 F.Supp.2d 922, 935 (D.N.M.1999) (holding two-and-a-half-year delay was not reasonable). Defendants also have not alleged that plaintiff's actions have in any way delayed the processing of his application. *See Singh,* 470 F.Supp.2d at 1068 (considering extent to which delay was attributable to plaintiff). Thus, the first TRAC factor weighs in favor of finding the delay to plaintiff unreasonable.

**\*9** With regard to the third and fifth TRAC factors, plaintiff asserts that he is being denied the benefits of permanent resident status. The "inability to obtain permanent resident status affects a wide range of important rights."*Id.* at 1070.For example, the delay prejudices plaintiff's ability to petition to immigrate close family members and adversely impacts his ability to seek United States citizenship. *See id.*Thus, these factors weigh in favor of finding the delay unreasonable.

With regard to the fourth TRAC factor, defendants have not provided any information that would allow the Court to find this factor in their favor. Plaintiff asserts that there is no active investigation of him and defendants have failed to dispute this assertion with any specificity. Defendants have described the name check system as being prioritized in order of application date, so requiring the processing of plaintiff's application may increase the delay for others. *See Liberty Fund, Inc. v. Chao,* 394

F.Supp.2d 105, 116 (D.D.C.2005). Defendants, however, have failed to submit any information regarding the extent of this potential impact on the processing of other applications.

Based on the nature of the security check process, the findings of other courts, and the prejudice to plaintiff, the Court concludes that the present four-year delay in adjudicating plaintiff's application is unreasonable. Though they had ample opportunity, defendants have failed to provide information that would allow the Court to find plaintiff's interests outweighed by the impact of a remedy on other agency activities. Accordingly, the Court will require defendants to complete the adjudication of plaintiff's application by no later than November 30, 2007. *See*5 U.S.C. § 706(1); *Singh,* 470 F.Supp.2d at 1072.

For the foregoing reasons, plaintiff's motion for summary judgment is **GRANTED** and defendants' motion to dismiss the complaint is **DENIED.**Defendants are directed to complete the adjudication of plaintiff's application for adjustment of status by no later than November 30, 2007. An appropriate Order accompanies this Memorandum Opinion.

> FN1. Defendants did not contest plaintiff's statement of material facts in support of his motion, and therefore the Court will accept the facts as undisputed. *See* LCvR 56.1.

> FN2. For instance, 8 C.F.R. § 103.2(b)(18) allows agency officials to make specific findings to support extensions of time to complete the necessary investigation. Defendants, however, have not relied upon this provision nor stated that any such findings were ever made.

> FN3. Because the Court finds that the APA provides a possible remedy for plaintiff, the Court need not reach the question of whether mandamus is available. *See Action Alliance of Senior Citizens v. Leavitt,* 483 F.3d 852, 858 (D.C.Cir.2007) (stating the standard rule is that the existence of an al-

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----

--- F.Supp.2d ----, 2007 WL 2460425 (D.D.C.)

**(Cite as: --- F.Supp.2d ----)**

ternative remedy precludes mandamus).

FN4. Congress has not provided a timetable for this action, so the second TRAC factor is inapplicable.

D.D.C.,2007.

Liu v. Novak

--- F.Supp.2d ----, 2007 WL 2460425 (D.D.C.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# ATTACHMENT B

# FBI NAME CHECK CRITERIA



U.S. Department of Homeland Security
970 Broad Street
Newark, NJ 07102

U.S. Citizenship
and Immigration
Services



# NOTICE

## FBI Name Check Expedite Criteria

In order for USCIS to expedite an FBI Name Check request, one of the following criteria must be established:

- Military deployment must be imminent

- Age-out benefits (not covered under the provision of the Child Status Protection Act)

- Writ of Mandamus – lawsuit pending in Federal Court

- Immigration Judge cases – grant of lawful permanent residence

- Compelling reasons as provided by the requesting office (i.e. critical medical condition) assessed on a case by case basis

# ATTACHMENT C

## USCIS UPDATE

*Office of Communications*
**U.S. Department of Homeland Security**



**U.S. Citizenship
and Immigration
Services**

February 20, 2007

# USCIS Update

## USCIS CLARIFIES CRITERIA TO EXPEDITE FBI NAME CHECK
*Federal Litigation Removed as Sole Basis to Expedite Check*

WASHINGTON – U.S. Citizenship and Immigration Services (USCIS) is no longer routinely requesting the FBI to expedite a name check when the only reason for the request is that a mandamus (or other federal court petition) is filed in the case.

USCIS may continue to request an expedited FBI name check if the case meets one of the other approved criteria, including:

1. Military deployment,
2. Age-out cases not covered under the *Child Status Protection Act*, and applications affected by sunset provisions such as diversity visas,
3. Significant and compelling reasons, such as critical medical conditions, and
4. Loss of social security benefits or other subsistence at the discretion of the USCIS District Director.

The FBI name check is an invaluable part of the security screening process, ensuring that our immigration system is not used as a vehicle to harm our nation or its citizens. USCIS also requests an FBI name check to screen out people who seek immigration benefits improperly or fraudulently and ensure that only eligible applicants receive benefits.

Information about the FBI name check is available on the USCIS website at http://www.uscis.gov or by calling the USCIS National Customer Service Center toll free at 1-800-375-5283.

–USCIS –

On March 1, 2003, U.S Citizenship and Immigration Services became one of three legacy INS components to join the U.S. Department of Homeland Security.  USCIS is charged with fundamentally transforming and improving the delivery of immigration and citizenship services,  while enhancing our nation's security.

**ATTACHMENT D**

**JEVREMOVIC AFFIDAVIT & CURRICULUM VITAE**

**AFFIDAVIT**
**of**
**Jela Jevremovic**

COMES NOW THE AFFIANT Jela Jevremovic and states the following:

1. I am a full-time, permanent employee of the Voice of America (VOA), an agency of the United States government.  My job title is "International Broadcaster".  Until September 2005, I had worked in VOA's Serbian language services, preparing U.S. government broadcasts to the Republic of Serbia, including interviews with leading U.S. Administration and U.S. Congressional officials on American foreign policy towards the Balkans.

2. Now, I work in the FOCUS Unit in VOA's Central News Division which provides news, correspondent reports, and analysis for VOA's English newswire, used by the agency's 44 language services.  My tasks in the newsroom's Focus Unit are to draft in-depth analyses of current U.S. and international affairs.  This position is a detail.  I am not a permanent staff member because I am an alien.  (Non-citizens are not allowed to work in the VOA's English-language newsroom.)

3. These broadcasts and analyses must be reflective of U.S. government policy.  They may not contradict or cast aspersions on actions, policies, or statements made by the President, the Department of State, or any U.S. government agency or official.

4. In the summer of 2007, I had to turn down a position as Chief of VOA's Serbian Service, because at VOA, non-citizens cannot supervise American citizens.  The majority of the staff in VOA's Serbian Service are U.S. citizens.  This has cost me a substantial pay raise and entry into a managerial position.

5. As a non-citizen, my job is at risk.  If there is a reduction of VOA staff or offices due

to budget cuts or reorganization, aliens will be dismissed first. (See Paragraph 6 of Affidavit of

Carroll E Cobb submitted by Respondent on October 19, 2007). American citizens are usually

offered a buyout or placement in positions in other parts of VOA. Aliens are not. This would be

another critical setback for me, as I do not have sufficient savings, investments, or property to

fall back on if I were out of work. I am still several years from retirement and very concerned

that I would not be able to find other employment if I lose my job at VOA because of citizenship

issues.

6. Non-citizens such as myself at VOA do not necessarily obtain promotions if they are

competing for advancement with U.S. citizens. (See. Paragraph 6 of Affidavit of Carroll E.

submitted by Respondent on October 19, 2007. Note use of words "may" and "can", instead of

"can" and "shall")

7. My citizenship interview is being indefinitely delayed because the Department of

Homeland Security and its component part, the U.S. Citizenship and Immigration Services

(USCIS), both agencies of the U.S. government, claim that they cannot take any action unless

and until the Federal Bureau of Investigation (FBI), a Respondent, checks my name against its

computerized database. (See Respondents' Motion to Dismiss, p. 2, filed September 24, 2007).

8. The FBI has already conduct three (3) "name checks" on me.

9. The FBI first conducted a "name check" as part of my Application for Permanent

Residence, granted on August 6, 2001. (See Records held by Respondents.)

10. The Federal Bureau of Investigation and the Central Intelligence Agency (CIA), also

an agency of the U.S. government, have subsequently conducted additional "name checks" on

me: first, when I became a VOA contract employee (October 5, 1998--See Attachment to

Petitioner's Opposition to Motion to Dismiss, filed October 9, 2007); second, when I became a

permanent employee (February 10, 1999). (See Paragraphs 3 and 4 of Affidavit by John Wybenga, submitted by Respondents on October 19, 2007).

11. I am a known quantity. I have worked for and advised various components of the United States government for many years. I have worked for U.S. news gathering corporations. I have worked for European news gathering organizations. I have written and published extensively. (See Attached Curriculum Vitae.)

12. I know of absolutely no fact or experience deriving from my character, background, or pubic or private life which would cause the delay of any "name check" on me performed by any U.S. government agency.

13. I further state that, since the FBI and CIA have previously performed "name checks" on me which were completed in three (3) months or less, there is absolutely no reason which can support a delay of more than 18 months in conducting the present "name check".

I declare under penalty of Perjury according to the laws of the United States of America and the District of Columbia that the foregoing statement is true and correct to the best of my knowledge, information, and belief.

Date: _11/02/07_                        Jela Jevremovic

3

**Ms. Jela Defranceschi-Jevremovic**

4545 Connecticut Ave. NW. #711
203-4394
Washington DC. 20008
jjevremo@voanews.com

Daytime phone: (202)

E-mail:

*Curriculum Vitae*

*SUMMARY*

Over 30 years of journalist experience and in-depth analysis of military, political and economic developments in the Balkans, as well as broad insights of the dynamics and developments in the European Union, the U-S and transatlantic relations. Held top media posts in former Yugoslavia also contributed significant expertise to Western media organizations, including Voice of America, CBS, CNN, BBC, Thames Television, HBO, and Australian ABC TV.

*Professional Experience*

September 2001
to present:     **International Radio and TV Broadcaster, Voice of America,**
                http://www.voanews.com/english/NewsAnalysis/focus-jfranceschi.cfm

- *2001 and 2002, 2003 VOA* Superior Accomplishment Awards, 2004 VOA Gold Medal Award

   October 1998   International Radio Broadcaster, Voice of America under contract
*to Sept. 2001*

Sept. 1995 to
June 1998:     **Head of Public Relations, International Management Group - IMG,** a European Union inter-governmental consulting group for reconstruction of infrastructure n the Balkans, Sarajevo Field Office.

- Facilitated IMG's public policy advocacy
- Maintained close cooperation with the Principles in the area: NATO, Office of the High Representative for Bosnia and Herzegovina, the World Bank, USAID, the European Commission, UNHCR, the European Bank for Reconstruction and Development and local authorities.
  http://www.img-int.org/Central/Public/

April 1992 to
Sept. 1995:     **War Correspondent, CBS Radio for former Yugoslavia.**

Jan. 1993
to May 1993:    **Chief Consultant,** ABC TV Australia of two 30-min. documentaries: *A Day in the Life of Bosnia' s President Alija Izetbegovic & Profile of Croatia's President Franjo Tudjman* - the former was broadcast also by CNN and the BBC TV.

May 1990 to

April 1992:    **Deputy Chief Editor of YUTEL** - one-hour TV newscast, broadcast from Sarajevo, Bosnia. YUTEL employed a staff of over 100 and sustained newsgathering bureaus in all six republics and two provinces of former Yugoslavia. YUTEL annual budget: US$ 5 million.

- 1992-1993 Contributor to CNN World Report program

- 1991 received a USIA $10,000 grant for the production of two documentary programs and series of interviews with high-ranking U-S officials including Secretary of State, Lawrence Eagleburger in Bush Sr. administration, Democratic presidential candidate, Michael Dukakis

Sept. 1989 to
May 1990 to:    **Deputy Chief Editor of Belgrade TV Channel 3.**

Sept. 1987 to
Jan. 1990:    **Correspondent, South-North News Service** based in Hanover, New Hampshire, which provides analysis and background information on countries outside of regular mainstream media coverage. Subscribers: New York Times, Washington Post, Wall Street Journal etc.

Jan. 1986 to
Dec. 1988:    **Chief Executive Officer and Editor in Chief** of a group of three magazines: published by Politika, the largest media conglomerate in former-Yugoslavia.

- 1987, Politika award for excellence in journalism.

Dec. 1987
to May 1988:    **Senior Consultant and Researcher,** BBC Timewatch 2-part, four-hour documentary on Italian war crimes in the Balkans in World War II. The documentary received won special citation at the International Venice Documentary Film Festival.

July 1986
April 1987:    **Special Consultant, Thames Television and HBO** 4 ½ hour documentary co-production on former UN General Secretary, Kurt Waldheim's career as an intelligence officer in the Balkans in World War Two. The documentary won 1987 Emmy nomination. Production budget US$ 4 million.

*Special Activities*

- 1992 - Provided daily briefs for the U.S. Embassy in Belgrade on the situation in Sarajevo, which was used by the office of Assistant Secretary of State and spokesman Margaret Tutwiler in the Bush Sr. administration

- 1992-1993 Provided intermittent briefs to Canadian General Lewis Mackenzie, first UN commander in Sarajevo during the Bosnia civil war and Fred Eckhard, spokesman for peace mediators, Cyrus R. Vance and Robert Owen of the United Nations

- 1997 - Consultant for Balkan affairs to Swedish-based International Institute for Democracy and Elections Assistance – IDEA

- With Dr. J. Durao Barroso, present President of the European Commission, co-chaired IDEA round table: Proposals for the Transition Towards Democracy in Bosnia and Herzegovina.
  www.idea.int/publications/barosso/barrosAnnex3.htm.

*Education:*    University of Belgrade, Law School, Yugoslavia

1    1998 - Helped develop the Open Society Institute Media Center in Zagreb, Croatia. Annual budget $200,000.

*References:*            Available upon request.

**ATTACHMENT E**

**WARNER AFFIDAVIT**

AFFIDAVIT

Edwin Warner

COMES NOW THE AFFIANT, Edwin Warner, and states the following:

1.  Before my retirement from the federal government in 2005, I was a broadcaster-analyst and editor at the Voice of America (VOA) for 22 years.

2.  In 2002, Ken Tomlinson, President of the Board of Broadcast Governors, asked me to set up a special analytical unit called "Focus" at VOA.

3.  Because of her unusually good grasp of foreign affairs, U.S. government policies, and their integration, I chose Jela Jevremovic as the first writer for that unit.

4.  Ms. Jevremovic lived up to my admittedly high expectations, producing consistently excellent work from 2002 to the present. Her programs from this period can be viewed on the VOA website – VOANews.com. They have held up well, as useful and relevant today as when they were written.

5.  As a key writer and analyst for VOA, Jela Jevremovic should advance into management. It is in the federal government's interest to retain her as a long-term employee.

6.  It is well known that VOA's budget is more mercurial than that of most other government agencies. It is subject to conflicting pressures from special interest groups and is too often cut.

7.  Alien employees, such as Ms. Jevremovic, do not advance as fast or as far as U.S. citizens. Moreover, in the event of a reduction in force due to reorganization or budget cuts, aliens, having no retention rights, are the first fired and the last offered a position in another part of the agency.

I declare under penalty of Perjury according to the laws of the United States of America and the District of Columbia that the foregoing statement is true and correct to the best of my knowledge, information, and belief.

Dated: 11/02/07

Edwin Warner

**ATTACHMENT F**

**JULY 17 USCIS PRESS RELEASE**

**&**

**SPRINGMANN E-MAIL TO AILA**



*Office of Communications*

**U.S. Citizenship
and Immigration
Services**

July 17, 2007

# USCIS Update

### USCIS Announces Revised Processing Procedures for
### Adjustment of Status Applications

**WASHINGTON**—U.S. Citizenship and Immigration Services (USCIS) announced that, beginning immediately, it will accept employment-based applications to adjust status (Form I-485) filed by aliens whose priority dates are current under the July Visa Bulletin, No. 107. USCIS will accept applications filed not later than August 17, 2007.

On July 2, 2007, USCIS announced that it would not accept any additional employment-based applications to adjust status. USCIS made that announcement after receiving an update from the Department of State that it would not authorize any additional employment-based visa numbers for this fiscal year. After consulting with USCIS, the Department of State has advised that Bulletin #107 (dated June 12) should be relied upon as the current July Visa Bulletin for purposes of determining employment visa number availability, and that Visa Bulletin #108 (dated July 2) has been withdrawn.

"The public reaction to the July 2 announcement made it clear that the federal government's management of this process needs further review," said Emilio Gonzalez, USCIS Director. "I am committed to working with Congress and the State Department to implement a more efficient system in line with public expectations."

USCIS's announcement today allows anyone who was eligible to apply under Visa Bulletin No. 107 a full month's time to do so. Applications already properly filed with USCIS will also be accepted. The current fee schedule will apply to all applications filed under Visa Bulletin No. 107 through August 17, 2007. (The new fee schedule that becomes effective on July 30, 2007, will apply to all other applications filed on or after July 30, 2007).

-USCIS-

**Subject:** Getting the ▮▮▮ Service Center Back on the Reservation
**From:** springmannslaw <springmannslaw@fcc.net>
**Date:** Fri, 19 Oct 2007 12:20:25 -0400
**To:** rdeasy@aila.org

FOR ROBERT DEASY, DIRECTOR OF LIAISON & INFORMATION

Dear Mr. Deasy:

Paul Zulkie out in Chicago suggested I contact you. He told me that you are dealing with several USCIS Service Centers that can't or won't abide by the July agreement to accept the State Dept.'s Visa Bulletin No. 107.

The ▮▮▮ Service Center took 6 weeks to reject an I-485 submission I had sent them for a Labor Certification Client (advanced degree). The I-140 had been approved and had a Sept. 2006 priority date. Received by the Center on ▮▮▮, 2007, USCIS kicked it back, claiming it wanted evidence visas were available from ▮▮▮ for my client. It landed here on ▮▮▮. I returned it ▮▮▮, with a letter, a copy of the visa bulletin, and the July 17 announcement that USCIS would abide by the visa numbers in the bulletin. I also asked the USCIS Ombudsman for help.

Yesterday, ▮▮▮, I got the package back again, this time with the ▮▮▮ Service Center claiming that the fees submitted in June were insufficient. The Center's position is that since it received the re-submitted documents after August 17, the new fees apply.

I frankly don;t know if this is sheer stupidity, a refusal to accept the deal made in July, or discrimination against ▮▮▮. Would greatly appreciate any help or advice you might be able to give. (My client, a student whose status is running out, is frantic.)

Mike Springmann
202-686-4869

**ATTACHMENT C**

**USCIS UPDATE**

*Office of Communications*
**U.S. Department of Homeland Security**



U.S. Citizenship
and Immigration
Services

February 20, 2007

# USCIS Update

## USCIS CLARIFIES CRITERIA TO EXPEDITE FBI NAME CHECK
### *Federal Litigation Removed as Sole Basis to Expedite Check*

WASHINGTON – U.S. Citizenship and Immigration Services (USCIS) is no longer routinely requesting the FBI to expedite a name check when the only reason for the request is that a mandamus (or other federal court petition) is filed in the case.

USCIS may continue to request an expedited FBI name check if the case meets one of the other approved criteria, including:

1. Military deployment,
2. Age-out cases not covered under the *Child Status Protection Act*, and applications affected by sunset provisions such as diversity visas,
3. Significant and compelling reasons, such as critical medical conditions, and
4. Loss of social security benefits or other subsistence at the discretion of the USCIS District Director.

The FBI name check is an invaluable part of the security screening process, ensuring that our immigration system is not used as a vehicle to harm our nation or its citizens. USCIS also requests an FBI name check to screen out people who seek immigration benefits improperly or fraudulently and ensure that only eligible applicants receive benefits.

Information about the FBI name check is available on the USCIS website at http://www.uscis.gov or by calling the USCIS National Customer Service Center toll free at 1-800-375-5283.

–USCIS –

On March 1, 2003, U.S Citizenship and Immigration Services became one of three legacy INS components to join the U.S. Department of Homeland Security.  USCIS is charged with fundamentally transforming and improving the delivery of immigration and citizenship services,  while enhancing our nation's security.

# ATTACHMENT E

# WARNER AFFIDAVIT

AFFIDAVIT

Edwin Warner

COMES NOW THE AFFIANT, Edwin Warner, and states the following:

1.  Before my retirement from the federal government in 2005, I was a broadcaster-analyst and editor at the Voice of America (VOA) for 22 years.

2.  In 2002, Ken Tomlinson, President of the Board of Broadcast Governors, asked me to set up a special analytical unit called "Focus" at VOA.

3.  Because of her unusually good grasp of foreign affairs, U.S. government policies, and their integration, I chose Jela Jevremovic as the first writer for that unit.

4.  Ms. Jevremovic lived up to my admittedly high expectations, producing consistently excellent work from 2002 to the present. Her programs from this period can be viewed on the VOA website – VOANews.com. They have held up well, as useful and relevant today as when they were written.

5.  As a key writer and analyst for VOA, Jela Jevremovic should advance into management. It is in the federal government's interest to retain her as a long-term employee.

6.  It is well known that VOA's budget is more mercurial than that of most other government agencies. It is subject to conflicting pressures from special interest groups and is too often cut.

7.  Alien employees, such as Ms. Jevremovic, do not advance as fast or as far as U.S. citizens. Moreover, in the event of a reduction in force due to reorganization or budget cuts, aliens, having no retention rights, are the first fired and the last offered a position in another part of the agency.

I declare under penalty of Perjury according to the laws of the United States of America and the District of Columbia that the foregoing statement is true and correct to the best of my knowledge, information, and belief.

Dated: 11/02/07

Edwin Warner