U.S. DISTRICT COURT
FOR
THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Jela JEVREMOVIC<br>4545 Connecticut Avenue N.W.<br>Apartment 711<br>Washington, D.C. 20008,<br>　　　　Petitioner | *<br><br>*<br><br>* | |
| v. | * | Case: 1:07-cv-01278 RMB |
| Michael CHERTOFF, Secretary<br>U.S. Department of Homeland Security<br>425 Murray Drive; Building 410<br>Washington, D.C. 20528,<br>　　　　Respondent | *<br><br>*<br><br>* | |
| Emilio T. GONZALEZ, Ph.D., Director<br>U.S. Citizenship & Immigration Services<br>20 Massachusetts Avenue N.W.<br>Washington, D.C. 20529,<br>　　　　Respondent | *<br><br>*<br><br>* | |
| Robert S. MUELLER III, Director<br>Federal Bureau of Investigation<br>935 Pennsylvania Avenue N.W.<br>Washington, D.C. 20525,<br>　　　　Respondent | *<br><br>*<br><br>* | |

**MOTION FOR SUMMARY JUDGMENT**

COMES NOW THE PETITIONER, Jela Jevremovic, by and through Counsel, and moves this Honorable Court for Summary Judgment in this matter under Rule 56 of the Federal Rules of Civil Procedure. As reasons for such, Petitioner Jevremovic states, according to the Rule, that:

　　A. More than 20 days have passed since this Action commenced.

B. There is no dispute as to any material fact in the case:

i. Petitioner Jevremovic applied for Naturalization as a Citizen of the United States of America on May 11, 2006 (date USCIS received her N-400 application form).

ii. As required by law and regulation, Respondent U.S. Citizenship and Naturalization Services (USCIS) has not adjudicated her application as of January 21, 2008. 8 U.S.C. § 1446(d); 8 U.S.C. § 1571(b); 8 C.F.R. § 335.3.

iii. USCIS has not even called Ms. Jevremovic for an interview to test her knowledge of U.S. history and culture as well as her ability to read, write, and speak English--as required by law. 8 U.S.C. § 1423.

iv. Although required by law and regulation, Respondent Federal Bureau of Investigation (FBI) has not completed, its "criminal background check" on Petitioner Jevremovic. Public Law 105-119, Title I, 111 Stat. 2448-49 (Nov. 26, 1997); 8 C.F.R. § 335.2.

v. As USCIS asserts, it may not adjudicate Petitioner's application for Naturalization unless and until the FBI completes its "criminal background check".

C. Jela Jevremovic is, therefore, entitled to judgment as a matter of law.

### STANDARD OF REVIEW

The federal Rule entitles a moving party to summary judgment when there is no genuine dispute as to any material fact, and the undisputed facts entitle the moving party to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 447 U.S. 242 (1986). In addressing a Motion for Summary Judgment, "the court must view the evidence in the light most favorable to the party against whom summary judgment is sought and must draw all reasonable inferences in [its] favor." Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Whether any disputed issue of fact exists is for the Court to determine. <u>Balderman v. United States Veterans Admin.</u>, 870 F.2d 57, 60 (2d Cir. 1989). The purpose of Rule 56 is to determine whether any factual controversy exists which would require a trial. The critical question for the Court on a Motion for Summary Judgment is whether there exists a genuine dispute as to a material fact, and if not, what the ruling of law should be upon those undisputed facts. The moving party has the initial burden of demonstrating the absence of a disputed issue of material fact. <u>Celotex v. Catrett</u>, 477 U.S. 317, 3232 (1986). Once such a showing has been made, the non-moving party must present "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The party opposing Summary Judgment "may not rely on conclusory allegations or unsubstantiated speculation." <u>Scotto v. Almenas</u>, 143 F.3d 105, 114 (2d Cir. 1998). Moreover, not every disputed factual issue is material in light of the substantive law that governs the case. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude summary judgment." <u>Anderson</u>, 477 U.S. at 248.

## STATEMENT OF FACTS

1. Ms. Jevremovic filed her Petition for a Writ of Mandamus on July 18, 2007. As of that date, Respondents had not completed her criminal background check and had not called her for a citizenship interview despite the statement on her Receipt Notice (Form 797-C) that Respondent USCIS would do so within 90 days. According to the USCIS website, at the time of filing of the Petition in 2007, it was processing naturalization applications filed on or before October 25, 2006, 5 months after she had filed hers. Beginning early in 2007, Petitioner twice telephoned Respondent USCIS about her case--without result, other than being told to go in person to the Washington, D.C. District Office located inconveniently in Merrifield, Va. On

3

May 29, 2007, Ms. Jevremovic did that and was told by an Immigration Officer who examined her records that the FBI's checking of her name was part of the delay. The official added that this name check could last four (4) more years.

## DISCUSSION

2. Naturalization is not discretionary. The USCIS must determine whether to grant or deny the Naturalization application. 8 U.S.C. § 1446(d). And, if the applicant has complied with all requirements for Naturalization, USCIS must grant the application. 8 C.F.R. § 335.3. Petitioner Jevremovic has complied with all legal and administrative requirements established by the Congress of the United States.

3. There are time limits for processing immigration benefits established by the Congress. To wit, 8 U.S.C. § 1571(b) states, "It is the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application[.]" Naturalization applications are among the "immigration benefit applications" included within this provision. This provision, along with 8 U.S.C. § 1571(a), § 1572, and § 1573, make clear Congress' intent to eliminate persistent backlogs in the processing of immigration benefit applications. Moreover, Congress has defined the term "backlog" in the statute as "the period of time in excess of 180 days that such application has been pending before the Immigration and Naturalization Service." 8 U.S.C. § 1572(1). Currently, 621 days have elapsed since Petitioner filed her Application for Naturalization, i.e. 441 days beyond the Congressionally-defined "backlog".

4. 8 U.S.C. § 1571(b) provides the statutory guideline and "rule of reason" for determining whether naturalization applications are being processed in a timely manner. Under

the most straightforward reading of 8 U.S.C. § 1571(b), all naturalization applications that are not finally adjudicated within 180 days of the date of submission are unreasonably delayed. Petitioner's Application has been unreasonably delayed for 441 days.

5. Petitioner is informed and believes that USCIS may have requested "FBI name checks" for some subset of naturalization applicants in past years. Petitioner is informed and believes that these FBI name checks may have involved FBI searches of an applicant's name through only its criminal files and databases.

6. Petitioner is informed and believes that, beginning in November 2002, USCIS dramatically altered the naturalization procedure by expanding the scope of the FBI name check, both by requiring the FBI to make electronic and manual searches of additional non-criminal FBI files and databases, and by requiring completion of FBI name checks as a prerequisite to the final adjudication of every naturalization application.

7. The expanded FBI name check used by USCIS for naturalization applications is not part of the FBI criminal background checks that are required by Public Law 105-119, Title I, 111 Stat. 2448-49 (Nov. 26, 1997) and implemented pursuant to 8 C.F.R. § 335.2.

8. When it expanded the FBI name check in November 2002, USCIS did not promulgate a proposed rule or give notice and an opportunity for public comment on the rule, as it had done in 1998 when implementing the FBI criminal background check requirement.

9. The expanded FBI name check was a substantive departure from prior USCIS policy because it imposed a new requirement in naturalization procedure not based on statute or regulation and because it has had a substantial adverse effect on applications for naturalization by causing significant delays in adjudication. As such, the Administrative Procedure Act, 5 U.S.C.

§ 701 *et seq.*, required USCIS to promulgate a proposed rule, provide a notice and comment period, and thereafter promulgate a final rule prior to enacting the November 2002 expanded FBI name check.

10. Petitioner is informed and believes that the expanded FBI name check consists of a search of a person's name through the FBI's criminal and non-criminal files in its Central Records System. The Central Records System contains administrative, applicant, criminal, personnel, and other FBI files. Petitioner is informed and believes that, since November 2002, the expanded FBI name check on naturalization applications includes an FBI search of not only criminal "main files" but also non-criminal "reference files" in the FBI's Central Records System.

11. Petitioner is informed and believes that each FBI name check based upon a USCIS request can involve up to for (4) stages--batch processing name searching, file review, and dissemination. Batch processing involves the transfer of applicant information from USCIS to the FBI, uploading of that information into an FBI system, and electronic checking of those names against the FBI's Universal Index. Name searching involves conducting manual electronic searches by entering the applicant's name into FBI databases. File review involves retrieving and reviewing FBI electronic and paper files that are identified as possibly containing information on a particular individual whose name is being checked. Files are reviewed for possible derogatory information on the applicant in question. Dissemination involves providing a summary of the relevant information to USCIS.

12. Petitioner is informed and believes that, if the initial stages of a name check yields a "No Record" result to USCIS, indicating no identifiable FBI information regarding a particular

6

individual, the FBI does not search further, and it provides the "No Record" result to USCIS. At that point, the FBI considers the name check to be complete. However, if the initial stages of a name check yield any indication that the FBI has information on a particular individual, the FBI employs the later stages of a name check to retrieve and review its files and search for derogatory information and report the results.

13. Petitioner is informed and believes that, since the November 2002 expansion, USCIS does not adjudicate applications for naturalization until it receives the results of a completed name check from the FBI.

14. Petitioner is informed and believes that USCIS and the FBI have entered into written agreements regarding the conduct of FBI name checks on, inter alia, applicants for naturalization, and that in these agreements neither USCIS nor the FBI impose any time limits for the completion of name checks.

15. Petitioner is informed and believes that, from time to time, and under certain circumstances, USCIS requests the FBI to expedite the name checks of certain individuals, including certain applicants for naturalization.

16. Petitioner is informed and believes that, beginning in April 2006, in response to a deluge of lawsuits around the country brought by frustrated post-examination naturalization applicants pursuant to 8 U.S.C. § 1447(b), USCIS implemented a new policy of refusing to schedule naturalization examinations for those applicants whose FBI name checks were not completed. USCIS has stated that an express purpose of this policy change was to preclude litigation under 8 U.S.C. § 1447(b) by those who have passed naturalization examinations and are awaiting final adjudication of their naturalization applications. As a result of this change in

policy, which appears to be an explicit effort to thwart Congress' intent to provide delayed naturalization applicants with recourse to federal courts, the applications of substantial numbers of applicants has been unreasonably delayed, and naturalization examinations have not been scheduled because of pending FBI name checks.

17. Name checks are now a key cause of delays in the processing of applications for naturalization, as well as applications for other immigration benefits such as Permanent Residence. In both 2006 and 2007, the USCIS Ombudsman, the individual required by Congress to provide recommendations on improving USCIS services and operations, declared that name checks "significantly delay adjudication of immigrant benefits for many customers, hinder backlog reduction efforts, and may not achieve their intended security objectives." *Citizenship and Immigration Services Ombudsman Annual Report 2006* (hereinafter "2006 Report") at 23 (June 29, 2006, *available at www.dhs.gov/cisombuddsman*; *Citizenship and Immigration Services Ombudsman Annual Report 2007* (hereinafter "2007 Report), at 37 (June 11, 2007), *available at www.dhs.gov/cisombudsman*.

18. In the most recent report, the Ombudsman declared that "FBI name checks may be the single biggest obstacle to the timely and efficient delivery of immigration benefits" and that the delays are getting worse, not better. 2007 Report at 37. The report noted that, as of May 2007, over 329,000 USCIS name checks were pending, with 64% of those cases (over 211,000) pending more than 90 days, and 32% (almost 107,000) pending more than one (1) year. *Id.* At 37. The report also found that the problems of long-pending name checks has worsened in the last year. *Id.*

19. The Ombudsman also questioned the value of FBI name checks in accomplishing

8

their stated purpose, which is to detect persons who should be denied immigration benefits because they pose a danger or threat to security. In response to USCIS' claims of effectiveness, the Ombudsman declared that "most, if not all, of the problem cases which would result in an eventual denial of benefits also can be revealed by the other, more efficient, automated criminal and security checks that USCIS initiates." 2007 Report at 41.

20. Moreover, the Ombudsman "agree[d] with the assessment of many case workers and supervisors at USCIS field offices and service centers that the FBI name check process has limited value to public safety or national security, especially since, in almost every case, the applicant is in the United States during the name check process, living or working without restriction." 2007 Report at 40. In further acknowledgment of the limited use of name checks, the Ombudsman noted that "[n]ame checks are not conducted by the FBI as part of ongoing investigations or from a need to learn more about an individual because of any threat or risk perceived by the FBI." 2007 Report at 38.

21. Petitioner Jevremovic has been a Permanent Resident of and physically present in the United States since August 6, 2001. Moreover, she is and has been employed by the United States of America as a Journalist and Radio and TV Broadcaster at the Voice of America since October 5, 1998.

22. In addition, "[t]o date, the Ombudsman has been unable to ascertain from USCIS the total number of actual problem cases that the agency discovered exclusively as a result of the name check." 2007 Report at 41. Indeed, neither USCIS nor the FBI has ever shown that naturalization applicants, as a class, pose a special danger or threat to security. Moreover, neither USCIS nor the FBI has ever show that the FBI name check alone has led to the detection of even

one naturalization applicant who posed a danger or threat to security.

23. Finally, according to the Ombudsman, the FBI has admitted "that it lacks the resources to perform the [USCIS name check] function in a timely manner." 2007 Report at 39.

## APPLICABLE LAW

### Petitioner is Able to Establish All the Elements of a Successful Mandamus Action

24. A mandamus petitioner must demonstrate that: (i.) he has a clear right to the relief requested; (ii.) the Respondent has a clear duty to perform the act in question; and (iii.) no other adequate remedy is available. Iddir v. INS, 301 F.3d 492, 499 (7th Cir. 2002). Petitioner easily meets all three of these criteria.

### i. *Petitioner Has a Clear Right to the Relief Requested*

25. Respondents have deliberately, willfully, and unreasonably refused to adjudicate Petitioner's Application for Naturalization for nearly two (2) calendar years, thereby depriving Petitioner of her rights under 8 C.F.R. §§ 316.2 *et seq.* and her right of being lawfully accorded the privileges of becoming a United States citizen. These rights include the ability to accept employment, vote, run for political office, and travel in and out of the United States freely and without delay. 8 U.S.C. §§ 1445 *et seq.* Petitioner is legally entitled to have her application for citizenship adjudicated forthwith.

### ii. *Respondents Have a Clear Duty to Perform the Act in Question*

26. This Writ of Mandamus should be granted under Summary Judgment because Respondents owe Petitioner Jevremovic the duty to act upon her request for prompt adjudication of her long-pending N-400 Application for Citizenship. See Donovan v. United States, 580 F.2d 1203, 1208 (3d cir. 1978), holding that Mandamus is an appropriate remedy whenever a party

demonstrates a clear right to have an action performed by a government official who refuses to act. Under the Regulations, Respondent Department of Homeland Security (DHS) and USCIS have a clear duty to adjudicate such applications. 8 C.F.R. §§ 310.1, 310.2. As here, where the government has failed to take any action, the Court may order the Respondents to adjudicate an application or petition. See e.g., Iddir v. INS, 301 F.3d 492, 500 (7th Cir. 2002), duty to adjudicate applications under the diversity lottery program.; Patel v. Reno, 134 F.3d 929, 933 (9th Cir. 1997), duty to adjudicate visa application.

27. Mandamus is also appropriate because the government has failed to act within a reasonable amount of time. See: Kim v. Ashcroft, 340 F. Supp.2d 384 (S.D.N.Y. 2004), noting that section 555(b) of the Administrative Procedure Act (APA) requires the government to act within a reasonable period of time. Petitioner Jevremovic has waited for almost two (2) years to have her N-400 Application for Citizenship adjudicated. Moreover, she has tried three (3) times to learn about the delay and, despite her best efforts, has received nothing more than "they are working on the 'name check', which might take 4 more years." As noted above, the DHS/USCIS processing times, most recently posted December 14, 2007 on their official website, show that N-400 Applications with filing dates of December 29, 2006, 7 months after Petitioner's, are now being adjudicated. Respondents have not requested any additional information or evidence necessary for processing nor have they supplied any reason for the inordinate delay in settling the matter, other than the airy response that it "might take as long as 4 years to process". That Ms. Jevremovic's Application has been pending for more than 20 months , since May 11, 2006, is unreasonable and unacceptable.

28. Because Respondents have a clear duty to adjudicate Petitioner Jevremovic's N-400

11

Application and because DHS/USCIS and the FBI have failed to act within a reasonable period of time, the Court may order the Respondents to promptly adjudicate said N-400 Application.

### iii. No Other Adequate Remedy is Available to Petitioner

29. The Writ of Mandamus ought to be granted through Summary Judgment because Petitioner Jevremovic has no alternative means of attaining adjudication of her Application and her right to issuance of the Writ is "clear and indisputable". Allied Chemical Corp. v. Daiflon, Inc., 449 U.S. 33, 35 (1980). Other than through the Department of Homeland Security and its Citizenship and Immigration Services division, coupled with a Federal Bureau of Investigation "name check", Petitioner has no other means of having her Application adjudicated. Throughout the last year, Ms. Jevremovic has utilized all administrative means, short of filing suit, to procure an answer from Respondents, including personal telephone calls and personal visits to USCIS offices. As noted above, this has been of no avail. Because no other adequate remedy is available to Petitioner, this Honorable Court may order Respondents to adjudicate and grant Ms. Jevremovic's N-400 Application.

## PRAYER FOR RELIEF

THEREFORE, Petitioner Jevremovic prays this Honorable Court for the following Relief:

I. Grant Summary Judgment to her;

II. Order Respondents to complete a "name check" and "criminal background check" within 30 calendar days of the appropriate Order being signed;

III. Order Respondents to schedule a Citizenship Interview within 45 calendar days of the appropriate Order being signed, if no derogatory information is found;

IV. Order Respondents to schedule a Naturalization Ceremony within 60 calendar days of the appropriate Order being signed, if no derogatory information is found and if Petitioner passes the required examination;

V. Award reasonable attorney's fees and costs in accordance with the Equal Access to Justice Act (5 U.S.C. § 504; 28 U.S.C. § 2412) because Respondents' positions were not substantially justified;

VI. And grant such other and further relief as this Honorable Court, in its wisdom, deems just and appropriate.

Date:  January 21, 2008                Respectfully submitted,

                                       Jela Jevremovic, Petitioner

                                       By counsel

                                       J. Michael Springmann
                                       Law Office of J. Michael Springmann PLLC
                                       4619 Yuma Street N.W.
                                       Washington, D.C. 20016
                                       Tel. (202) 686-4869
                                       Fax (202) 966-1254
                                       E-Mail: springmannslaw@fcc.net
                                       U.S. District Court Bar No. 465099

## U.S. DISTRICT COURT
## FOR
## THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Jela JEVREMOVIC<br>4545 Connecticut Avenue N.W.<br>Apartment 711<br>Washington, D.C. 20008,<br>　　　　　Petitioner | *<br><br>*<br><br>* | |
| v. | * | Case: 1:07-cv-01278 RMB |
| Michael CHERTOFF, Secretary<br>U.S. Department of Homeland Security<br>425 Murray Drive; Building 410<br>Washington, D.C. 20528,<br>　　　　　Respondent | *<br><br>*<br><br>* | |
| Emilio T. GONZALEZ, Ph.D., Director<br>U.S. Citizenship & Immigration Services<br>20 Massachusetts Avenue N.W.<br>Washington, D.C. 20529,<br>　　　　　Respondent | *<br><br>*<br><br>* | |
| Robert S. MUELLER III, Director<br>Federal Bureau of Investigation<br>935 Pennsylvania Avenue N.W.<br>Washington, D.C. 20525,<br>　　　　　Respondent | *<br><br>*<br><br>* | |

## ORDER

Having read the pleadings in this matter and having considered the ability of the Federal Bureau of Investigation (FBI) and other agencies to conduct background investigations and "name checks" expeditiously when required (particularly when that agency[ies] has/have performed similar ones on Ms. Jevremovic in the past), it is this _____ day of _____, 2008

ORDERED

that Ms. Jevremovic's Motion for Summary Judgment on her Petition for a Writ of Mandamus be, and hereby is, granted; and it is further

ORDERED

that Respondents complete the background investigation and "name check" on Petitioner within 30 calendar days after entry of this Order; and it is further

ORDERED

that Respondents schedule a Citizenship Interview within 45 calendar days of the appropriate Order being entered, provided no derogatory information has been found, so as to avoid even the appearance of retaliation against Ms. Jevremovic; and it is further

ORDERED

that Respondents schedule a Naturalization Ceremony within 60 calendar days of the appropriate Order being entered, provided no derogatory information is found, and if Petitioner passes the examination, so as to avoid even the appearance of retaliation against Ms. Jevremovic; and it is further

ORDERED

that Respondents pay all Ms. Jevremovic's reasonable attorney's fees and costs in accordance with the Equal Access to Justice Act (5 U.S.C. § 504; 28 U.S.C. § 2412) because Respondents' positions were not substantially justified.

                                              Ricardo M. Urbina
                                              U.S. District Judge

## CERTIFICATE OF SERVICE

I hereby certify that, on January 21, 2008, I served electronically, through the Court's Electronic Case filing system, the U.S. Attorney for the District of Columbia, Jeffrey A. Taylor, located at 555 4th Street N.W.; Washington, D.C. 20530 with a true and correct copy of the foregoing Motion for Summary Judgment and Order.

_____
J. Michael Springmann