**U.S. DISTRICT COURT**
**FOR**
**THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| Jela JEVREMOVIC | * | |
| 4545 Connecticut Avenue N.W. | | |
| Apartment 711 | * | |
| Washington, D.C. 20008, | | |
| Petitioner | * | |
| | | |
| v. | * | Case: 1:07-cv-01278 RMB |
| | | |
| Michael CHERTOFF, Secretary | * | |
| U.S. Department of Homeland Security | | |
| 425 Murray Drive; Building 410 | * | |
| Washington, D.C. 20528, | | |
| Respondent | * | |
| | | |
| Emilio T. GONZALEZ, Ph.D., Director | * | |
| U.S. Citizenship & Immigration Services | | |
| 20 Massachusetts Avenue N.W. | * | |
| Washington, D.C. 20529, | | |
| Respondent | * | |
| | | |
| Robert S. MUELLER III, Director | * | |
| Federal Bureau of Investigation | | |
| 935 Pennsylvania Avenue N.W. | * | |
| Washington, D.C. 20525, | | |
| Respondent | * | |

**PETITIONER'S MEMORANDUM SUPPORTING HER MOTION FOR SUMMARY JUDGMENT**
**and**
**OPPOSING RESPONDENTS' MOTION FOR SUMMARY JUDGMENT OR TO DISMISS**

COMES NOW THE PETITIONER, Jela Jevremovic, by and through counsel, and again respectfully requests this Honorable Court to deny Respondents' Motion to for Summary Judgment or to Dismiss. In support of her request, Ms. Jevremovic states as follows:

1. Undersigned Counsel did not receive electronic or any other form of notice that Judge Urbina required a response to the government's Motion for Summary Judgement or to Dismiss until May 5, 2008. (Exhibit 1.)

2. On Friday, May 2, 2008, Undersigned Counsel attempted to learn from Judge Urbina's Courtroom Deputy, Mr. Dales, and the chief of Electronic Case Filing, Mr. Burgess, and from Judge Urbina's law clerk, Jeff Cook,  the reason for the non-receipt of notice, first brought to the Undersigned's attention by a junk E-mail (Exhibit 2).

3. On Sunday, May 4, 2008, the Undersigned sought an explanation for the non-receipt of the appropriate notice from his Internet Service Provider, Frontline Communications Corp. (Exhibit 3).  To date, no response has been received.

4. In the past, most notably in 2003, the U.S. Justice Department has interfered with the Undersigned's E-mail accounts.  (Exhibit 4, "E-mail Spying & Attorney-Client Privilege", Counterpunch.org, March 29, 2004).

5. A Memorandum supporting Petitioner's Motion for Summary Judgment and Opposing Respondents' Motion for Summary Judgment or to Dismiss is attached.

May 5, 2008                                    Respectfully submitted,
                                               Jela Jevremovic

                                               By Counsel,


                                               J. Michael Springmann
                                               Law Office of J. Michael Springmann PLLC
                                               4619 Yuma Street N.W.
                                               Washington, D.C. 20016
                                               Tel. (202) 686-4869
                                               Fax (202) 966-1254
                                               E-Mail: springmannslaw@fcc.net
                                               U.S. District Court Bar No. 465099

**U.S. DISTRICT COURT**
**FOR**
**THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| Jela JEVREMOVIC | * | |
| 4545 Connecticut Avenue N.W. | | |
| Apartment 711 | * | |
| Washington, D.C. 20008, | | |
| Petitioner | * | |
| | | |
| v. | * | Case: 1:07-cv-01278 RMB |
| | | |
| Michael CHERTOFF, Secretary | * | |
| U.S. Department of Homeland Security | | |
| 425 Murray Drive; Building 410 | * | |
| Washington, D.C. 20528, | | |
| Respondent | * | |
| | | |
| Emilio T. GONZALEZ, Ph.D., Director | * | |
| U.S. Citizenship & Immigration Services | | |
| 20 Massachusetts Avenue N.W. | * | |
| Washington, D.C. 20529, | | |
| Respondent | * | |
| | | |
| Robert S. MUELLER III, Director | * | |
| Federal Bureau of Investigation | | |
| 935 Pennsylvania Avenue N.W. | * | |
| Washington, D.C. 20525, | | |
| Respondent | * | |

**PETITIONER'S MEMORANDUM SUPPORTING HER MOTION FOR SUMMARY**
**JUDGMENT**
**and**
**OPPOSING RESPONDENTS' MOTION FOR SUMMARY JUDGMENT OR TO**
**DISMISS**

COMES NOW THE PETITIONER, Jela Jevremovic, by and through counsel, and again

respectfully requests this Honorable Court to deny Respondents' Motion to for Summary

Judgment or to Dismiss.  In support of her request, Ms. Jevremovic states as follows:

1

## Jurisdiction

1. The government again appears to be making smoke without fire. The attorneys from the U.S. Department of Justice totally misread the Federal Rules of Civil Procedure, the law, the roles of the U.S. Citizenship and Immigration Services (USCIS) and the Federal Bureau of Investigation (FBI).

2. Throughout all of its pleadings, the government insists that this Honorable Court does not have Subject Matter Jurisdiction.   The government has asserted in its Motion for Summary Judgment or to Dismiss that this Honorable Court does not have subject matter jurisdiction under the federal question statute, 28 U.S.C. § 1361, the mandamus statute, 28 U.S.C. § 1361, and the Administrative Procedure Act, 5 U.S.C. §§ 555(b), 704. According to the U.S. Attorney's argument, it has not unlawfully withheld any action, the FBI's name check is not legally required by a date certain, and that there is no statutory requirement to adjudicate Petitioner's Application for Citizenship. Further, the U.S. Attorney asserted that Congress did not specify any time frame within which USCIS is to conduct naturalization proceedings, should it so choose, adding that Congress doesn't permit aliens to have recourse to U.S. courts except in very limited circumstances. The government goes on to say that federal courts may not set deadlines for agency action.

3. The government is wrong and its argument supports unconscionable behavior by U.S. agencies. 28 U.S.C. § 1331 provides a general grant of subject matter jurisdiction to federal district courts in civil actions over "federal questions" arising under the laws of the United States. The Supreme court has found that 28 U.S.C. § 1331 serves as the jurisdictional basis for federal courts "to review agency action". Califano v. Sanders, 430 U.S. 99 (1977).

2

4. Apparently, in its "argument", the government is raising a jurisdictional challenge while simultaneously claiming that the grounds for a valid cause of action are insufficient. *See* Steel Co. v. Citizens for a Better Environment 523 U.S. 83, 89 (1988). *See also* Ahmed v. DHS, 328 F.3d 383, 386-87 (7th Cir. 2003). (Distinguishing between the court's power to adjudicate the case, which is jurisdictional, and the court's power to grant relief, which is not jurisdictional.)

5. Failure to state a valid cause of action calls for a judgment on the merits and not for dismissal for want of jurisdiction. Bell v. Hood, 3237 U.S. 678, 682 (1946). The Supreme Court made pellucidly clear that:

> jurisdiction...is not defeated...by the possibility that the averments might fail to state a cause of action on which petitioners could actually recover. Rather, the district court has jurisdiction if 'the right of the petitioners to recover under their complaint will be sustained if the laws of the United States are given one construction and will be defeated if they are given another...'

Steel Co. 523 U.S. at 89 (quoting Bell, 327 U.S. at 682, 685. Thus, the Ahmed court has held that in resolving whether mandamus jurisdiction is present in an immigration case, the allegations of the complaint are taken as true (unless patently frivolous) to avoid "tackling the merits under the ruse of assessing jurisdiction." Ahmed, 328 F.3d at 386-387.

6. Applying these principles, the 7th Circuit held in Ahmed that the question of whether a statute imposed a "duty" on the government for purposes of mandamus relief was not a jurisdictional question. As the court explained:

> [T]he district court has jurisdiction under § 1361 (the mandamus statute) to determine whether the prerequisites for mandamus relief have been satisfied: does the plaintiff have a clear right to the relief sought; does the defendant have a duty to perform the act in question; and is there no other adequate remedy available...A conclusion that any of those prerequisites is missing should lead the district court to deny the petition, not (for lack of jurisdiction) but because the plaintiff has not demonstrated an entitlement to this form of extraordinary relief. Ahmed, 328

3

F.3d at 386-87

7. THEREFORE, this is not a jurisdictional question and cannot lead to dismissal. To reiterate, (1) Mrs. Jevremovic has a clear right to relief: she has applied for naturalization as a citizen of the United States of America in accordance with the law, to wit, The Immigration and Nationality Act (INA), § 310 *et seq.* (8 U.S.C. § 1421 *et seq.*) As a Legal Permanent Resident, she seeks protection under the laws of the United States and her "clear right" to relief falls within the "zone of interests" of the INA, i.e. the interests sought "to be protected are within those...to be protected or regulated by the statute..." Association of Data Processing Service Organizations, Inc. v. Camp, 397 U.S. 150, 150 (1970). (2) The INA prescribes as mandatory (or ministerial) an investigation of an applicant for naturalization. This investigation may be waived in an individual case. INA § 335(a). § 335(d) reads: "The employee designated [by the Attorney General of the United States ] to conduct any such investigation shall make a determination as to whether the application should be granted or denied, with reasons therefor." In the instant case, the government apparently has not taken any action on Ms. Jevremovic's application, either to investigate her, or to waive the investigation, or to grant citizenship or to deny her application. To date, governmental inability or unwillingness to act has lasted nearly 24 months. (3) There is no other remedy at law available to Petitioner. Under the INA (§ 310), USCIS has sole responsibility for granting the naturalization of aliens.

8. Essentially, the government's assertion that this matter is committed to agency discretion and therefore exempt from the Administrative Procedure Act (APA) and the Mandamus statute jurisdiction for failure to identify "a clear duty to act" is incorrect. The government does not, repeat not, have the option of whether or not to act on applications made to

4

it. All of the cases cited by the government in its voluminous pleadings flow from this basic erroneous premise. Additionally, the government has incorrectly asserted that there is no statutory or regulatory timetable for its background investigation. In fact, the regulations establish the set timetable that has been ignored here for review of any alleged investigation. 8 C.F.R. § 103.2(b)(1). The government also incorrectly asserts this portion of its decision as discretionary. Instead, as the Undersigned has repeatedly noted, there is a non-discretionary duty to adjudicate.

9. In the naturalization context, this duty is set forth at 8 C.F.R. § 316.14(b)(1) (as cited in Kaplan v. Chertoff, 481 F. Supp. 2d 370 (E.D. Pa. 2007). In the end, the baseline determination that the name check provides is one of statutory eligibility to determine whether an applicant is of "good more character" which is a statutory requirement under 8 U.S.C. § 1427(a), see also § 1427(d) and (e). The name check is part of a statutory eligibility determination, not a discretionary one. This case involved a duty to adjudicate that statutory question. Cf. Pinho v. Gonzalez, 432 F.3d 193, 204 (3rd Cir. 2005). (Determination of legal eligibility for adjustment of status is a legal, not a discretionary, determination.)

10. The agency failure to act on Ms. Jevremovic's application for citizenship is sufficiently definitive to make this matter ripe. The inaction and refusal to appropriately review her N-400 under 8 C.F.R. 103.2(b)(18) operates as a denial of the application and does have an adverse impact on Ms. Jevremovic. Even if she is permitted to maintain legal status in the U.S., the failure of the government to do its duty has eroded her (and others') confidence in the American legal process. A refusal to act that functions as a denial affects the Petitioner every day. The agency inaction meets the first three steps in a ripeness analysis. See FTC v. Standard

Oil, 449 U.S. 232, 2390240 (1980).

11. Again, seen in the context of a refusal to act, the decision is purely a legal one--whether the agency chooses to follow regulations relating to: (1) the duty to adjudicate; and (2) the timely processing and review of "investigations" being made into an applicant's background. This Honorable Court's assertion of jurisdiction and examination of whether the agency is, in fact, following its own procedures, would speed enforcement of the right to an adjudication of Petitioner's application. This situation would meet the fourth and fifth parts of the FTC standard. Id.

### "Line-Jumping"

12. As an additional factor, the Undersigned notes the government asserts that this action would only serve to allow Mrs. Jevremovic to have her case heard before others who have not filed in federal court. This assertion belies the fact that Petitioner is not asking to be placed in front of people who filed their claims with the agency before her. She is merely asking to be placed in the same position as those USCIS claims it is serving now. According to the USCIS website, the government is processing this matter in a different way than other identical cases. Its standard processing times indicate that it currently completing citizenship applications filed on January 11, 2007. Petitioner Jevremovic filed hers with the Service on May 11, 2006. The disparity in dates is more than half a calendar year and this application has been pending for two calendar years. By way of comparison, the Regulation governing the investigative review of like cases would now require a review by the Director of USCIS in Washington, D.C. (a Respondent in this matter), and not simply a District or Regional Director. 8 C.F.R. § 103.2(b)(18). Again, it is in factual dispute whether any such investigation has occurred, let alone that it has been

6

reviewed in accordance with the applicable regulation.

13. Ms. Jevremovic is not, as the government asserts, trying to jump a line. Nor is she claiming a right to an adjudication within a particular time frame. She is merely trying to regain her proper place in line and receive a decision on an application that has been effectively denied through inaction. The claim is for adjudication "in a reasonable time" as set forth in USCIS regulations and s required under the APA. See Kaplan v. Chertoff. Also see Kim v. Klapakas, Civil Action No. 06-05589 (E.D. Pa. 2007). At least one other Judge in that District has accepted a claim on the same premise and cited to the government's published processing times. Song v. Klapakas, (Stengel, J.) , 2007 U.S. Dist. LEXIS 27203 at *4 (E.D. Pa April 12, 2007).

### Who's in Charge of Name Checks?

14. The Undersigned also notes that the declaration provided by Mr. Cannon of the FBI in the instant case contradicts a declaration provided relating to name check clearances in the naturalization context. Compare Document 20-4 of Motion for Summary Judgment or to Dismiss, Declaration of Michael Cannon, FBI with a Motion's Document 12/2 in another case (Hamandi v. Chertoff et al, 1:07-CV-2153 ESH, U.S. District Court for D.C., Declaration of Joyce A. Brown, USCIS officer. Cannon asserts in paragraphs 19, 39, and 40 that USCIS controls the name check requirements. In paragraph 12 of her declaration, Brown claims that the FBI has full control of these same requirements: "*Cases with pending FBI name checks are not considered to be within the control of USCIS.*"

15. Both of these agency affidavits engage in a finger-pointing tarantella: each blames the other agency for the delay in citizenship name checks. USCIS claims it can't confirm whether the FBI undertakes an investigation or even whether such an investigation would be

7

related to national security (whatever that is). Id. at para. 6 & 7. As noted above, the FBI insists that it is not the agency charged with the adjudication but cf. Kaplan supra.

16 The declaration from USCIS purports to provide an explanation for the USCIS actions in the name check process. First, it acknowledges that the FBI is the agency in control of the name check file. See Decl. of Joyce Brown para. 5, 6, & 7 ("...USCIS ensures that the FBI has, in fact, received all requests for name checks."). This is of central importance for two reasons: first, the FBI functions as the designee of the USCIS (In Kaplan, the court stated "Under these limited circumstances, where Congress has conditioned CIS's mandatory action on the FBI's completion of background checks, and where applicants must pay the FBI, through CIS, to complete the background checks, the Court holds that Congress has, by implication, imposed on the FBI a mandatory duty to complete the background checks. Since the FBI has a mandatory duty to act, the APA requires that the FBI complete the criminal background checks in a reasonable amount of time." Internal note omitted); and second, USCIS has no way of knowing what the FBI is doing with its name check files: FBI Query reports do not provide USCIS with any indication as to what information the FBI may have relating to a particular alien, whether an FBI investigation into the particular alien has been undertaken, or **whether there are national security concerns relating to that alien"** (Emphasis added.) The USCIS declaration also indicates that, even if a case is outside of the standard time as posted on the agency website, that is not evidence that a delay is unreasonable "due to factors within the control of USCIS" Id. para. 12. Thus, by its own terms, the USCIS declaration acknowledges it has no control over the investigation and provides no information directly from the agency in control of that investigation, i.e., the co-Respondent FBI. In short, it provides no insight into the actual

handling of this type of case.

17  The implication from the repeated government statements regarding the processing of name checks, i.e., on a first in-first out basis, versus its claimed intent to work through the backlog of nearly 3 million applications for adjustment of status and for citizenship by Summer 2008 (Exhibit 6) is that no real security or investigative purpose is being served by the current name check program and there is no reason for the government to treat people stuck in that system differently from people who are not in it.

18.  It is also extremely telling that the government provides no information as to the time frame in which the instant case has been handled.  Specifically, there is no indication of any individual review in accordance with 8 C.F.R. § 103.2((b)(18).  The government has not even addressed the primary factual allegation made by Petitioner Jevremovic: that the agency has failed to act in a timely manner in accordance with its requirements to review "investigations" and its duty to adjudicate.  (8 C.F.R. § 103.2(b)(18); 8 C.F.R. § 245.2(a)(5) and Kaplan supra.) Perhaps conducting discovery in this matter so as to best ascertain what the exact timeliness for the actions that USCIS has asserted it undertakes would be a good way to proceed.

### National Insecurity

19.  In its voluminous pleadings, the government repeatedly cites to issues of national security (whatever they may be) and moral fitness as being cardinal issues for USCIS and the FBI.  Again, the lack of action and the admitted lack of funding for such an allegedly important task as the FBI name check program belies the government's arguments on this issue.  If "National Security" is not an issue, there is no justification for this delay.  Again, at its base, the instant case is not about a discretionary determination on naturalization.  It is about an agency

9

that has too often shirked its responsibilities both to the applicants for naturalization and the public it is obligated to serve. The "good moral character"determination is a statutory requirement , and it is not discretionary. If the FBI is "short-staffed", it should be noted that a fee is charged for "biometric clearance". Any serious approach to national security would not allow name checks to go un-performed for almost two years.

20 By its actions in flooding the Court with a spring tide of pleadings, the government is again seeking to delay this matter for its own ends, rather than for the rights of its citizens or legal permanent residents. Despite its voluminous and somewhat tiresome pleadings about the FBI's great care and thoroughness in assessing every possible record that might possibly mention an applicant for citizenship, the government, perhaps not unsurprisingly, omits all reference to recent USCIS and FBI decisions designed to "expedite" and "eliminate" the backlog of FBI name checks. On February 28, 2008, USCIS announced that adjustment of status applicants whose FBI name checks had been pending for more than 180 days would have their applications for permanent residence adjudicated forthwith. Should USCIS receive derogatory information on the applicant, conceded as "unlikely", the Service would then detain the applicant and place him in removal proceedings. (See Exhibit 5). On April 2, 2008, USCIS and the FBI announced that they would "prioritize" name checks, something which the government, in all its pleadings, claims is not possible due to (1) too many applications; (2) too much detail to be got through; and (3) the ever-present "threat of terrorists" (other than John Yoo). According to the news release (Exhibit 6), the government will be all caught up in July 2008 for name checks pending for more than 2 years. Since Ms. Jevremovic's application for naturalization has been delayed for two years to date, it appears as if the government is surreptitiously seeking a way out of performing

its duty to her and avoiding paying her reasonable attorney's fees and costs. That is, the government desperately fears this Honorable Court deciding that it should treat Mrs. Jevremovic at least as well as a Legal Permanent Resident and adjudicate her petition forthwith. (But then, she might be able to vote in the Fall election and, perhaps, vote for a candidate other than the one selected by the Republican Party.)

21. In this shady light, it is "interesting" to note that the government's two factual assertions seem to contradict each other. On the one hand, the government professes the importance of national security. On the other hand, it claims that the lack of funding for the FBI name check process is the reason for delays like the ones experienced by Petitioner Jevremovic and that the root cause is an insufficient budget. In truth, the current unconscionable backlog in "security" clearances has very little to do with security and no deference should be given on that issue. The current program stands in violation of the statutory and regulatory directive for periodic six month reviews of "investigations". 8 C.F.R. § 103.2(b)(18). By the government's own admission, no such investigation has been demonstrated. If we dare to presume that the government complies with its own regulations, this would mean that there is not, and never was, an investigation into the instant case. The name check program, as it is currently structured, is a an unfunded administrative and Executive branch mandate not appropriated by Congress. If it were truly a matter of national security, it would be a priority and the funding would be made available.

### Ignorance (of the Regs) is Bliss--for Some

22. Additionally, contrary to what the government asserts in its Motion to Dismiss and in its Reply in Support thereof, Michael Cannon, in paragraph 23 of his Declaration states

11

categorically that in November 2002 "deeper, more detailed clearance procedures were required to protect the people and the interests of the United States effectively...Before November 2002, only those 'main' files that could be positively identified with an individual were considered responsive to the litigation authorities name check requests...the FBI altered its search criteria to include 'reference' files as well...this meant the FBI was required to review many more files in response to each individual background check request...From a processing standpoint, this meant the FBI was required to review many more files in response to each individual background check request. " Not unsurprisingly, Mr. Cannon says not one word in his Declaration about how this change did not result, as it should have, in a Proposed Rule being published with ample time for Notice and Comment, as the APA requires. 5 U.S.C. § 553. This expanded FBI name check was, as Mr. Cannon admitted, a substantive departure from prior USCIS policy because it imposed a new requirement in naturalization procedure not based on statute or regulation and because it has had a substantial adverse impact on applicants for naturalization by causing significant delays in adjudication.

23. USCIS and the FBI have provided no explanation for the delay in processing this case. Their failure to act is not excusable. The investigation and adjudication have been "unreasonably delayed" and further inaction is "arbitrary, capricious, and contrary to the law." The inaction and failure to file reports or reviews of its alleged investigations is a violation of the government's own regulations and procedures. It merits intervention by this Honorable Court. This is not a situation, as asserted by the government in a similar case, in which the "decision on **when** to conduct an examination **after** the background check has been has been completed is within the discretion of the agency. Government Brief in <u>Omar v. Mueller</u>, Case No. 07-cv-813

(D. N.J. pending) at para. 16 (Emphasis added). If this Honorable Court were to accept that extreme position, it would mean that USCIS could, after whatever interminable delay is inflicted by the FBI name check process, initiate another interminable delay or even decide never to adjudicate at all. In reality, the appearance is that the agencies have already chosen a path of non-adjudication, particularly in cases involving Muslims and Arabs. Cf. Adil Amrani et al. Plaintiffs-Petitioners v. Susan Dugas et al. Defendants. Case No. 6:08-cv-246-ORL-18-KRS. U.S. District Court for the Middle District of Florida. Filed 0211912008. USCIS and FBI inaction and refusal to adjudicate clearly run afoul of the agencies' own regulations (8 C.F.R. § 316.14 and 8 C.F.R. § 103.2(b)(18) and represent a failure to exercise discretion which is clearly reviewable with a remedy available through mandamus and the APA.   This is not a case in which the Court will be called upon to arbitrarily set a deadline. Rather, this Honorable Court can apply a standard of law and a duty to adjudicate that are clearly in the regulations and the statute and require action in a reasonable time frame where that action has been unlawfully withheld.

24. Under mandamus, the agencies do not have discretion to ignore their own regulations. In fact, the 3rd Circuit has remedied such a situation in another immigration context. See Ngo v. INS, 192 F.3d 390, 400 (3rd Cir. 1999), Appendix of Court Opinion providing for Interim Procedures for agency to follow until it provides appropriate implementation of statute and regulations. The failure of the government to make a decision is a violation of the type of duty identified in 28 U.S.C. § 1361. Under Mandamus, this Honorable Court has the power to compel action to perform that duty although it cannot mandate whether the decision is to approve or deny. The refusal to adjudicate  is also unlawful and an "unreasonable delay" under the APA.

13

## PETITIONER HAS A CLEAR RIGHT TO SUMMARY JUDGMENT

A.  More than 20 days have passed since this Action commenced.

B.  There is no dispute as to any material fact in the case:

i.  Petitioner Jevremovic applied for Naturalization as a Citizen of the United States of America on May 11, 2006 (date USCIS received her N-400 application form).

ii.  As required by law and regulation, Respondent U.S. Citizenship and Naturalization Services (USCIS) has not adjudicated her application as of January 21, 2008.  8 U.S.C. § 1446(d); 8 U.S.C. § 1571(b); 8 C.F.R. § 335.3.

iii.  USCIS has not even called Ms. Jevremovic for an interview to test her knowledge of U.S. history and culture as well as her ability to read, write, and speak English--as required by law.  8 U.S.C. § 1423.

iv.  Although required by law and regulation, Respondent Federal Bureau of Investigation (FBI) has not completed, its "criminal background check" on Petitioner Jevremovic.  Public Law 105-119, Title I, 111 Stat. 2448-49 (Nov. 26, 1997); 8 C.F.R. § 335.2.

v.  As USCIS asserts, it may not adjudicate Petitioner's application for Naturalization unless and until the FBI completes its "criminal background check".

### STANDARD OF REVIEW

25.  The federal Rule entitles a moving party to summary judgment when there is no genuine dispute as to any material fact, and the undisputed facts entitle the moving party to judgment as a matter of law.  Anderson v. Liberty Lobby, Inc., 447 U.S. 242 (1986).  In addressing a Motion for Summary Judgment, "the court must view the evidence in the light most favorable to the party against whom summary judgment is sought and must draw all reasonable

14

inferences in [its] favor." Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574,

587 (1986). Whether any disputed issue of fact exists is for the Court to determine. Balderman

v. United States Veterans Admin., 870 F.2d 57, 60 (2d Cir. 1989).     The purpose of Rule 56 is

to determine whether any factual controversy exists which would require a trial. The critical

question for the Court on a Motion for Summary Judgment is whether there exists a genuine

dispute as to a material fact, and if not, what the ruling of law should be upon those undisputed

facts. The moving party has the initial burden of demonstrating the absence of a disputed issue

of material fact. Celotex v. Catrett, 477 U.S. 317, 3232 (1986). Once such a showing has been

made, the non-moving party must present "specific facts showing that there is a genuine issue for

trial." Fed. R. Civ. P. 56(e). The party opposing Summary Judgment "may not rely on

conclusory allegations or unsubstantiated speculation." Scotto v. Almenas, 143 F.3d 105, 114

(2d Cir. 1998).   Moreover, not every disputed factual issue is material in light of the substantive

law that governs the case. "Only disputes over facts that might affect the outcome of the suit

under the governing law will properly preclude summary judgment." Anderson, 477 U.S. at 248.

## APPLICABLE LAW

### Petitioner is Able to Establish All the Elements of a Successful Mandamus Action

26. A mandamus petitioner must demonstrate that: (i.) he has a clear right to the relief

requested; (ii.) the Respondent has a clear duty to perform the act in question; and (iii.) no other

adequate remedy is available. Iddir v. INS, 301 F.3d 492, 499 (7th Cir. 2002). Petitioner easily

meets all three of these criteria.

#### i. *Petitioner Has a Clear Right to the Relief Requested*

27. Respondents have deliberately, willfully, and unreasonably refused to adjudicate

Petitioner's Application for Naturalization for nearly two (2) calendar years, thereby depriving Petitioner of her rights under 8 C.F.R. §§ 316.2 *et seq.* and her right of being lawfully accorded the privileges of becoming a United States citizen. These rights include the ability to accept employment, vote, run for political office, and travel in and out of the United States freely and without delay. 8 U.S.C. §§ 1445 *et seq.* Petitioner is legally entitled to have her application for citizenship adjudicated forthwith.

### ii. *Respondents Have a Clear Duty to Perform the Act in Question*

28. This Writ of Mandamus should be granted under Summary Judgment because Respondents owe Petitioner Jevremovic the duty to act upon her request for prompt adjudication of her long-pending N-400 Application for Citizenship. See <u>Donovan v. United States</u>, 580 F.2d 1203, 1208 (3d cir. 1978), holding that Mandamus is an appropriate remedy whenever a party demonstrates a clear right to have an action performed by a government official who refuses to act. Under the Regulations, Respondent Department of Homeland Security (DHS) and USCIS have a clear duty to adjudicate such applications. 8 C.F.R. §§ 310.1, 310.2. As here, where the government has failed to take any action, the Court may order the Respondents to adjudicate an application or petition. See e.g., <u>Iddir v. INS</u>, 301 F.3d 492, 500 (7th Cir. 2002), duty to adjudicate applications under the diversity lottery program.; <u>Patel v. Reno</u>, 134 F.3d 929, 933 (9th Cir. 1997), duty to adjudicate visa application.

29. Mandamus is also appropriate because the government has failed to act within a reasonable amount of time. See: <u>Kim v. Ashcroft</u>, 340 F. Supp.2d 384 (S.D.N.Y. 2004), noting that section 555(b) of the Administrative Procedure Act (APA) requires the government to act within a reasonable period of time. Petitioner Jevremovic has waited for almost two (2) years to

16

have her N-400 Application for Citizenship adjudicated. Moreover, she has tried three (3) times to learn about the delay and, despite her best efforts, has received nothing more than "they are working on the 'name check', which might take 4 more years." As noted above, the DHS/USCIS processing times, most recently posted December 14, 2007 on their official website, show that N-400 Applications with filing dates of December 29, 2006, 7 months after Petitioner's, are now being adjudicated. Respondents have not requested any additional information or evidence necessary for processing nor have they supplied any reason for the inordinate delay in settling the matter, other than the airy response that it "might take as long as 4 years to process". That Ms. Jevremovic's Application has been pending for more than 20 months , since May 11, 2006, is unreasonable and unacceptable.

     30. Because Respondents have a clear duty to adjudicate Petitioner Jevremovic's N-400 Application and because DHS/USCIS and the FBI have failed to act within a reasonable period of time, the Court may order the Respondents to promptly adjudicate said N-400 Application.

### iii. No Other Adequate Remedy is Available to Petitioner

     31. The Writ of Mandamus ought to be granted through Summary Judgment because Petitioner Jevremovic has no alternative means of attaining adjudication of her Application and her right to issuance of the Writ is "clear and indisputable". <u>Allied Chemical Corp. v. Daiflon, Inc.</u>, 449 U.S. 33, 35 (1980). Other than through the Department of Homeland Security and its Citizenship and Immigration Services division, coupled with a Federal Bureau of Investigation "name check", Petitioner has no other means of having her Application adjudicated. Throughout the last year, Ms. Jevremovic has utilized all administrative means, short of filing suit, to procure an answer from Respondents, including personal telephone calls and personal visits to USCIS

offices. As noted above, this has been of no avail. Because no other adequate remedy is available to Petitioner, this Honorable Court may order Respondents to adjudicate and grant Ms. Jevremovic's N-400 Application.

WHEREFORE, for all the reasons cited herein, and in the original Petition for the Writ of Mandamus, Petitioner Jevremovic respectfully requests that this Honorable Court:

I  Deny the government's Motion for Summary Judgment or to Dismiss;

II  Grant her Motion for Summary Judgment;

III  Order Respondents to conduct a public notice and comment period to remedy the lack of regulations governing their combined criminal background and name checks, as required by the APA, 5 U.S.C. § 553;

IV  Order Respondents to complete a "name check" and "criminal background check" within 30 calendar days of the appropriate Order being signed;

V.  Order Respondents to schedule a Citizenship Interview within 45 calendar days of the appropriate Order being signed, if no derogatory information is found;

VI.  Order Respondents to schedule a Naturalization Ceremony within 60 calendar days of the appropriate Order being signed, if no derogatory information is found and if Petitioner passes the required examination;

VII.  Award reasonable attorney's fees and costs in accordance with the Equal Access to Justice Act (5 U.S.C. § 504; 28 U.S.C. § 2412) because Respondents' positions were not substantially justified;

VIII.  And grant such other and further relief as this Honorable Court, in its wisdom,

deems just and appropriate.

May 5, 2008                                Respectfully submitted,


                                           Jela Jevremovic


                                           By Counsel,



                                           J. Michael Springmann
                                           Law Office of J. Michael Springmann PLLC
                                           4619 Yuma Street N.W.
                                           Washington, D.C. 20016
                                           Tel. (202) 686-4869
                                           Fax (202) 966-1254
                                           E-Mail: springmannslaw@fcc.net
                                           U.S. District Court Bar No. 465099

**U.S. DISTRICT COURT**
**FOR**
**THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| Jela JEVREMOVIC | * | |
| 4545 Connecticut Avenue N.W. | | |
| Apartment 711 | * | |
| Washington, D.C. 20008, | | |
|                   Petitioner | * | |
| | | |
|       v. | * | Case No.1:07-cv-01278 RMB |
| | | |
| Michael CHERTOFF, Secretary | * | |
| U.S. Department of Homeland Security | | |
| 425 Murray Drive; Building 410 | * | |
| Washington, D.C. 20528, | | |
|                   Respondent | * | |
| | | |
| Emilio T. GONZALEZ, Ph.D., Director | * | |
| U.S. Citizenship & Immigration Services | | |
| 20 Massachusetts Avenue N.W. | * | |
| Washington, D.C. 20529, | | |
|                   Respondent | * | |
| | | |
| Robert S. MUELLER III, Director | * | |
| Federal Bureau of Investigation | | |
| 935 Pennsylvania Avenue N.W. | * | |
| Washington, D.C. 20525, | | |
|                   Respondent | * | |

## ORDER

Having read the pleadings in this matter and having considered the ability of the Federal

Bureau of Investigation (FBI) and other agencies to conduct background investigations and

"name checks" expeditiously when required, it is this _____ day of _____, 2008

ORDERED

that the government's Motion for Summary Judgment or to Dismiss be and hereby is

denied; and it is further

ORDERED

that Mrs. Jevremovic's Motion for Summary Judgment be, and hereby, is granted; and it is further

ORDERED

that Respondents publish a proposed rule and conduct a public notice and comment period within 45 days of the appropriate Order being entered to remedy the lack of regulations governing their use of combined criminal background and name checks, as required by the APA, 5 U.S.C. § 553; and it is further

ORDERED

that Respondents complete the background investigation and "name check" on Petitioner within 30 calendar days after entry of this Order; and it is further

ORDERED

that Respondents schedule a Citizenship Interview within 45 calendar days of the appropriate Order being entered, provided no derogatory information has been found, so as to avoid even the appearance of retaliation against Mrs. Jevremovic; and it is further

ORDERED

that Respondents schedule a Naturalization Ceremony within 60 calendar days of the appropriate Order being entered, if no derogatory information is found and if Petitioner passes the required examination, so as to avoid even the appearance of retaliation against Mrs. Jevremovic; and it is further

ORDERED

that Respondents pay all Mrs. Jevremovic's reasonable attorney's fees and costs in

21

accordance with the Equal Access to Justice Act (5 U.S.C. § 504; 28 U.S.C. § 2412) because Respondents' positions in this matter were not substantially justified.


_____
Ricardo M. Urbina
U.S. District Judge

## CERTIFICATE OF SERVICE

I hereby certify that, on May 5, 2008, I served electronically, through the Court's Electronic Case filing system, the U.S. Attorney for the District of Columbia, Jeffrey A. Taylor, located at 555 4th Street N.W.; Washington, D.C. 20530 with a true and correct copy of the foregoing Memorandum Opposing Supporting Her Motion for Summary Judgment and Opposing Respondents' Motion for Summary Judgment or to Dismiss Supporting Opposition to Dismiss and Order and Exhibits.

J. Michael Springmann

# EXHIBIT I

# NOTICE OF ELECTRONIC FILING

Activity in Case 1:07-cv-01278-RMU JEVREMOVIC v. CHERTOFF ...

Case 1:07-cv-01278-RMU     Document 24     Filed 05/05/2008     Page 27 of 46

**Subject:** Activity in Case 1:07-cv-01278-RMU JEVREMOVIC v. CHERTOFF et al Order
**From:** DCD_ECFNotice@dcd.uscourts.gov
**Date:** Mon, 5 May 2008 09:47:27 -0400
**To:** DCD_ECFNotice@dcd.uscourts.gov

This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.
***NOTE TO PUBLIC ACCESS USERS*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing.

**U.S. District Court**

**District of Columbia**

### Notice of Electronic Filing

The following transaction was entered on 02/26/2008 at 09:28:39 AM and filed on 02/26/2008
**Case Name:**      JEVREMOVIC v. CHERTOFF et al
**Case Number:**     1:07-cv-01278-RMU
**Filer:**
**Document Number:**

**Docket Text:**
**MINUTE ORDER: The respondents filed a motion for summary judgment on February 4, 2008. To date, the petitioner has not responded. Local Civil Rule 7(b) requires that oppositions to dispositive motions be filed within 11 days after the date of service of the motion. And, "[i]f such a memorandum is not filed within the prescribed time, the Court may treat the motion as conceded." LCvR 7(b). Furthermore, if specific arguments are not opposed in a party's opposition, the court may treat those arguments as conceded. Stephenson v. Cox, 223 F. Supp. 2d 119, 121 (D.D.C. 2002). Accordingly, it is hereby ORDERED that the petitioner response to the respondents' motion for summary judgment is due on or before Friday, February 29, 2008. Should the petitioner fail to respond to the respondents' motion, the court may treat the motion as conceded. Signed by Judge Ricardo M. Urbina on 2/26/08. (lcrmu2)**

**1:07-cv-01278-RMU Notice has been electronically mailed to:**

J. Michael Springmann springmannslaw@fcc.net

**1:07-cv-01278-RMU Notice will be delivered by other means to::**

Robin Michelle Meriweather
ASSISTANT UNITED STATES ATTORNEY
555 Fourth Street, NW

**EXHIBIT II**

**JUNK E-MAIL CLAIMING THAT**
**JEVROMOVIC V. CHERTOFF SETTLED**

**Subject:** Acceleration of proceeds from Jevremovic v. Chertoff et al or others
**From:** "Pacelli, Jim" <jpacelli@rapidfunds.com>
**Date:** Fri, 2 May 2008 13:18:04 -0400
**To:** <SPRINGMANNSLAW@FCC.NET>


J Michael Springmann,

In re: Jevremovic v. Chertoff et al and/or possibly other case(s) where settlement has been reached but settlement proceeds remain unpaid.

RapidFunds can provide Law Office of J Michael Springmann immediate funding of pending legal fees plus disbursements on settled cases within hours of the paperwork being signed. Procedural requirements and insurance company delays can adversely affect cash flow. RapidFunds can accelerate your receipt of settlement proceeds and get you back to practicing law - not managing cash flow.


Our post-settlement funding features:
> Fast and easy funding of up to 100% of your attorney's fees and reimbursable case expenses within hours of settlement
> No application fees, monthly charges or hidden costs
> Confidential Funding - No UCC filings or personal financial information required

For more information, visit www.rapidfunds.com and click "Get Started Now" to download our application or call me anytime at (914) 552-4706.


Best Regards,

Jim Pacelli
Vice President
RapidFunds by
Cybersettle Financial Services, LLC
44 South Broadway - 5th floor
White Plains, NY 10601
(914) 552-4706 direct
www.rapidfunds.com

P.S.  If you are planning on attending the AAJ convention in Philadelphia in July, please stop by our booth in the exhibit hall. We will also be hosting a cocktail reception and would love to have you join us. Please let me know if you will be able to attend.


To view my LinkedIn profile, visit http://www.linkedin.com/in/jimpacelli


We send out a limited number of emails from public record filings only to attorneys we think could benefit from our program. If you would like to be removed from our database, simply reply to this message and add REMOVE in the subject.

**EXHIBIT III**

**E-MAIL TO FRONTLINE COMMUNICATIONS CORP.**

**ASKING WHEREABOUTS OF ECF E-MAIL**

**Subject:** Missing Email
**From:** springmannslaw <springmannslaw@fcc.net>
**Date:** Sun, 04 May 2008 08:58:14 -0400
**To:** support@fcc.net

Please tell me what happened to the email from the U.S. District Court for DC. sent
sometime after Feb. 26, 2007?

Mike Springmann

**EXHIBIT IV**

**U.S. JUSTICE DEPARTMENT INTERFERENCE WITH E-MAILS**

March 29, 2004

# Email Spying and Attorney Client Privilege

## US Government Reads All About It

# By J. MICHAEL SPRINGMANN, Esq.

Once upon a time in a country very different from today's, sending an E-mail was like making a telephone call or mailing a first-class letter: the sender had a reasonable expectation of privacy in his message. Today, with terrorists under every bed and a government vowing to search them out and destroy them, no matter the consequences, E-mail users have no expectation of privacy whatsoever. Under the so-called USA Patriot Act, passed but not read by a corrupt, incompetent, and illegitimate Congress, the federal government can and does read all about E-mail messages, including their authors, their contents, and their addressees.

I know this for a certainty. In April 2003, the U.S. Justice Department seized and read the contents of my personal and professional E-mail accounts at America On Line (AOL).

Using the pretext of searching for an alleged Al-Qa'ida gun moll (with three children under the age of 5 years), the Justice Department clandestinely seized and blocked the use of these AOL accounts. The Assistant U.S. Attorneys who did this had no real knowledge of the woman's activities, whereabouts, or connection, if any, with Al-Qa'ida. The Justice Department had no knowledge of, or interest in the welfare and whereabouts of her three children. Indeed, the U.S. Attorneys involved had no reason to believe that I had any contact with her or her children. Yet, on "national security" grounds (which seemed to focus on harassing my client), the Justice Department officials secretly went to a tame magistrate and got a warrant under the

inaptly-named Patriot Act to seize and read my E-mail messages. In keeping with the new way of doing things in Washington, the Justice Department never informed me of what it had done.

Suspecting that something was amiss when AOL blocked access to my accounts, I repeatedly called that company, headquartered in CIA-subservient Fairfax County, Virginia. After a month, one of the many voices on the telephone slipped up and told me that a "security override" had been placed on my accounts. Calls to the National Association of Criminal Defense Lawyers (NACDL) brought about a confrontation with one of the Muslim-hating Assistant U.S. Attorneys involved. Under questioning, he told a member of the NACDL's Attorney Strike Force, in very general terms, of what had been done.

What does this mean to me, you ask? Beyond the violation of attorney-client privilege and the invasion of my privacy and that of my correspondents, I no longer have access to my E-mail addresses, since AOL kept them on its computer. And so I cannot inform my contacts that I have a new E-mail provider. I have no idea whether the Justice Department is still reading the E-mail messages sent and received by my correspondents, whose addressees turned up in the seizure of my accounts. Indeed, I continue to have problems sending and receiving messages to my friends and clients around the world with my new provider (which causes me to wonder if the process is not still continuing). And I must explain to clients and potential clients rightly concerned about confidentiality that the U.S. government has read and may still read E-mails to and from them.

Can this be reversed? No. A U.S. District Court judge told me that if I didn't accept the situation, I could file a civil rights law suit. As a solo practitioner, this would not be practical. Can I get help? No. The American Civil Liberties Union has told me that it would be unrealistic to sue the federal government. It also stated that AOL, because of its terms-of-service contract, is judgment-proof.

In Nazi Germany and the old Soviet Union, both run by a better class of people than we now have in public service in the U.S. of A. today, people disappeared; they mysteriously failed to advance; and they suffered from guilt by association. They were informed on by their neighbors; their property was seized without compensation. But, and it is a big "But", this was regarded as wrong, both by the citizens spied upon and by the spies themselves.

Is my situation, that of my client, and that of the alleged gun moll really any different? Yes! In this condition, no one sees a violation of either the letter or the spirit of the federal Constitution. They, and the "they" are generally well-educated, well-traveled, and white, admire the new security processes and procedures. It makes them feel safer, they say.

However, I don't feel safer. I particularly don't feel safer after a well-connected journalist with expertise in national security matters, told me that he suspected the alleged Al-Qa'ida operative and her children are most likely in U.S. government hands but that the feds who have her aren't telling the rest of the alphabet soup of agencies that she and her children are in their custody. After all, this is the government that ran a program, with Osama bin Laden's extensive help, to recruit terrorists in Saudi Arabia, bring them to the United States for training, and then send them on to Afghanistan to murder Soviet soldiers.

You don't have to be crazy to work for Uncle Sam, but it helps.

**J. Michael Springmann** is a DC-area attorney. He previously spent 20 years in the Foreign Service.

**EXHIBIT V**

**USCIS POLICY CHANGE ELIMINATING FBI NAME CHECKS**

**FOR CERTAIN LEGAL PERMANENT RESIDENTS**



Home > Press Room

# Questions and Answers: Background Check Policy Update

**Q1.  What applications are affected by this policy change?**
A1.  Applications included in this policy are:

- I-485, Application to Register Permanent Residence or Adjust Status;
- I-601, Application for Waiver of Ground of Inadmissibility;
- I-687, Application for Status as a Temporary Resident Under Section 245A of the Immigration and Nationality Act; and
- I-698, Application to Adjust from Temporary to Permanent Resident (Under Section 245A of Public Law 99-603).

**Q2.  How has USCIS changed its national security requirements?**
A2.  USCIS has not changed its background check policies for naturalization applications.  Recently, the agency did modify its existing guidance for certain applications (see above) where the immigration laws allow for the detention and removal of individuals if actionable information from a FBI name check response is received after approval.

No application for lawful permanent residence will be approved until a definitive FBI fingerprint check and Interagency Border Inspection Services (IBIS) check are completed and resolved favorably.  (Please refer to the USCIS Immigration Security Checks fact sheet in the Related Links section of this page for more information.)

**Q3.  How has USCIS changed its adjudications requirements?**
A3.  For these forms, including applications for lawful permanent residence, USCIS will adjudicate the application based on all required evidence outlined in applicable law and regulation if the application is otherwise approvable, outside of normal processing times, and the FBI name check request has been pending for more than 180 days.

**Q4.  What happens if USCIS later receives adverse information from an FBI name check?**
A4.  In the unlikely event that Department of Homeland Security, (DHS) receives actionable adverse information from the FBI name check after the application is adjudicated, DHS may detain the applicant and initiate removal proceedings.

**Q5.  Why is this policy being implemented?**
A5.  This policy change responds to a 2005 DHS Inspector General recommendation that USCIS better align its background check screening policies with those of U.S. Immigration and Customs Enforcement.

**Q6.  Is this policy consistent with the national security priorities of USCIS and the Department of Homeland Security?**
A6.  Yes.  Applications for lawful permanent residence will not be approved until a definitive FBI fingerprint check and Interagency Border Inspection Services (IBIS) check are completed and resolved favorably.  In addition, in the unlikely event that DHS receives actionable adverse information after the application is approved, removal proceedings may be initiated.

**Q7.  How many applications for lawful permanent residence are immediately affected by this policy change?**
A7.  USCIS is aware of approximately 47,000 applications for permanent residence (I-485) cases that are otherwise approvable but have an FBI name check pending.  A portion of these cases are both outside normal processing times and have an FBI name check that has been pending for more than 180 days.  These cases will be subject to processing under the new policy.  USCIS anticipates the majority of the cases that can now be adjudicated will be processed by mid-March 2008.

**Q8.  Does this policy change affect naturalization applications?**
A8.  No.  There is no change in the requirement that FBI name check, FBI fingerprint and Interagency Border Inspection Services (IBIS) check results be obtained and resolved prior to the adjudication of an Application for Naturalization (N-400).

**Q9.  How long will it take for USCIS to work through the cases affected by the policy change?**
A9.  USCIS has begun identifying cases affected by this policy modification in each field office and service center.  Each office will evaluate the pending cases and will adjust their workload accordingly.  USCIS anticipates the majority of the cases subject to this policy modification will be processed by mid-March 2008.  We recommend customers wait until March 10 before inquiring about their cases.  This will allow each office sufficient time to identify and adjudicate pending cases.

**Q10.  The memorandum identifies I-485, I-601, I-687 and I-698 forms.  Is there a plan to include other forms, specifically nonimmigrant and naturalization, in this policy?**
A10.  No.

**Q11.  Should customers contact USCIS through the 1-800 customer service number or make an INFOPASS appointment to visit their local office if their case is outside of normal processing times and they believe their application meets the criteria of this new policy?**
A11.  For pending applications outside of normal processing times, we recommend that customers wait until March 10, 2008, before inquiring about

**EXHIBIT VI**

**USCIS & FBI POLICY CHANGE TO ELIMINATE BACKLOG**

**OF FBI NAME CHECKS FOR NATURALIZATION**



*Office of Communications*

**U.S. Citizenship and Immigration Services**

# News Release

April 2, 2008

## USCIS AND FBI RELEASE JOINT PLAN TO ELIMINATE BACKLOG OF FBI NAME CHECKS
### *Partnership Establishes Series of Milestones To Complete Checks*

WASHINGTON – U.S. Citizenship and Immigration Services (USCIS) and the Federal Bureau of Investigation (FBI) today announced a joint plan to eliminate the backlog of name checks pending with the FBI.

USCIS and the FBI established a series of milestones prioritizing work based on the age of the pending name check. The FBI has already eliminated all name check cases pending more than four years.

"This plan of action is the product of a strong partnership between USCIS and the FBI to eliminate the backlogs and to strengthen national security," said USCIS Director Emilio Gonzalez.

By increasing staff, expanding resources, and applying new business processes, the goal is to complete 98 percent of all name checks within 30 days. USCIS and the FBI intend to resolve the remaining two percent, which represent the most difficult name checks and require additional time to complete, within 90 days or less. The goal is to achieve and sustain these processing times by June 2009.

The joint plan will focus on resolving the oldest pending FBI name checks first. USCIS has also requested that the FBI prioritize resolution of approximately 29,800 pending name checks from naturalization applicants submitted to the FBI before May 2006 where the naturalization applicant was already interviewed.

The target milestones for processing name checks are:

| Completion Goal | Category |
| --- | --- |
| May 2008 | Process all name checks pending more than three years |
| July 2008 | Process all name checks pending more than two years |
| Nov. 2008 | Process all name checks pending more than one year |
| Feb. 2009 | Process all name checks pending more than 180 days |
| June 2009 | Process 98 percent of all name checks within 30 days and process the remaining two percent within 90 days. |

– USCIS –

**DECLARATION OF JOYCE BROWN, USCIS**

1

# UNITED STATES DISTRICT COURT

## DISTRICT OF COLUMBIA

Rola Hamandi
     Petitioner

v.                                     Civil Action: 1:07-2153-ESH

Michael Chertoff
Secretary, U.S. Department
Of Homeland Security

Emilio T. Gonzalez, Ph.D.
Director, U.S.Citizenship &
Immigration Services

Robert S. Mueller, Director
Federal Bureau of Investigation,

     Respondents

## DECLARATION OF JOYCE A. BROWN

    I, Joyce A. Brown, the undersigned Senior Adjudications Officer of the Texas Service Center, United States Citizenship and Immigration Services, pursuant to 28 U.S.C. § 1746, declare the following:

1. I am employed by the United States Citizenship and Immigration Services (USCIS) as a Supervisory Center Adjudications Officer (SCAO), at the Texas Service Center (TSC) in Dallas, Texas. It is in this official capacity and based upon personal knowledge, review of relevant records, paper and electronic, and information discovered in the course of my official duties, that I provide this declaration.

2. I have been employed as an SCAO since May 1996 and have been employed in other capacities by the agency since February 1992. I am currently the supervisor of the Application for Naturalization (N-400) unit which is responsible for overseeing the intake

Declaration of Joyce A. Brown  1      Case No.: 07-cv-02153, District of Columbia

Case 1:07-cv-01278-RMU     Document 24     Filed 05/05/2008     Page 42 of 46

Mar 11 08 09:24a     Case 1:07-cv-02153-ESH     Document 12-2     Filed 09/19/2     of 6     p.

1    processing of the N-400 from initial receipt of the application by the TSC through the receipt

2    of Federal Bureau of Investigation (FBI) name check clearances and scheduling the

3    naturalization examination or interview in the USCIS district or field office where the

4    applicant resides. As Supervisor of the N-400 unit at TSC, I manage the team that monitors

5    and oversees the intake processing of the N-400 involved in this litigation. Most of the

6    actual work my unit oversees is done by contractor personnel.

7    3.  During fiscal year 2007, the N-400 section oversaw the initial receipt by TSC of 217, 041 N-

8    400 applications and the completion of processing on 121,166 N-400 cases.

9    4.  Petitioner, Rola Hamandi, born on 11/2/1970 is a native and citizen of Lebanon whose status

10    was adjusted to that of a Lawful Permanent Resident (LPR) of the United States on

11    10/22/2001, and who filed an N-400 with the TSC on 07/31/2006. On 08/29/2006, the TSC

12    requested the FBI name check for plaintiff's N-400. As of today's date, the name-check for

13    the plaintiff remains pending with the FBI. The FBI fingerprints on the plaintiff were last

14    processed on 08/30/2006. The FBI fingerprint checks remain valid for a period of 15 months

15    after they have been processed by the FBI. Because the fingerprint check expired on

16    11/30/2007, a new fingerprint appointment has been requested of petitioner.

17    5.  Once USCIS receives an N-400 application, a file is opened and an electronic record of that

18    application is created. Much of this initial electronic processing and data entry is automated,

19    including the automatic generation and electronic transmission of a FBI name check request

20    in FBIQUERY, the FBI repository and tracking system for FBI name check requests. Once

21    the initial file creation and processing of an N-400 is complete, each file is routinely

22    monitored for the status of the background checks.

23    6.  Initially, the TSC runs a weekly electronic report in USCIS' FBIQUERY system for all files

24    pending name check responses from the FBI to confirm the successful transmission of the

25    FBI name check request and to identify those applications that have received responses from

26    the FBI name checks and FD-258 (fingerprints) and are thus ready to schedule for

27    examination by the District offices. FBI name check requests that have been received by the

    FBI but have not yet been completed are indicated by a notation of "Pending" in

1     FBIQUERY. An FBI name check that has been completed will be indicated by various

2     entries depending on the result, including "No Record," "Positive Record," etc.

3   7.  This report will also identify those N-400s that have received a "No Data" or "Error"

4     response in FBIQUERY indicating a problem with transmission of the name check request

5     from USCIS to the FBI. If such a problem is reported, the FBI name check requests will then

6     be initiated a second time and resent manually or electronically to the FBI for a response. In

7     this way USCIS ensures that the FBI has in fact received all requests for name checks.

8     FBIQUERY reports do not provide USCIS with any information as to what information the

9     FBI may have relating to a particular alien, whether an FBI investigation into the particular

10     alien has been undertaken, or whether there are national security concerns relating to that

11     alien.

12   8.  Once the FBI name check request is submitted, the file is then sent to a separate "Pending

13     Shelf" to await a response.  All files on the Pending Shelf are audited regularly in order to

14     identify those in which a response from the FBI has been received.  This audit is conducted,

15     at least, every 4 weeks.  In this manner, the agency ensures that as FBI responses are received

16     the files are properly released for adjudication.  Plaintiff's file was placed on the Pending

17     Shelf in accordance with these procedures and has been audited regularly at least every 4

18     weeks to determine if an FBI response has been received.  This review was last done on this

19     case on January 31, 2007, and this case will continue to be monitored for the completion of

       background checks.

20   9.  Since the terrorist attacks of September 11, 2001, the need to conduct more rigorous and

21     thorough background checks on aliens who are seeking immigration status in the United

22     States has required procedures that sometimes result in individuals not receiving their

23     documents and benefits as quickly as in the past.  In order to ensure national security and

24     public safety, as well as to reduce the waiting time for adjudications, USCIS is currently

25     working with DOJ, DHS, and ICE to develop and implement improved procedures that will

26     ensure that all of the background checks are completed and the results considered as quickly

27     as possible.  However, the public safety requires USCIS to make certain that the checks have

Declaration of Joyce A. Brown  3          Case No.: 07-cv-02153, District of Columbia

Case 1:07-cv-01278-RMU    Document 24    Filed 05/05/2008    Page 44 of 46
Mar 11 Case 1:07-cv-02153-ESH    Document 12-2    Filed 03/12/2008    Page 4 of 6
Joyce A. F. Brown
P.

1    been done before USCIS adjudicates the N-400. Accordingly, pursuant to law and

2    established agency policy, all required security checks must be completed prior to

3    adjudication of the application.

4    10. In accordance with 8 CFR § 335.2 (b), in the absence of a "definitive response" from the FBI

5    with regard to the name check request, the plaintiff may not be scheduled for a naturalization

6    interview on the N-400.

7    11. For most applicants, USCIS can quickly determine if there are criminal or security related

8    issues in the applicant's background that affect eligibility for immigration benefits.

9    However, due both to the sheer volume of security checks USCIS conducts, and the fact that

10    USCIS must await responses from the FBI or other relevant agencies that conduct some of

11    the required security checks, some delays on individual applications are unavoidable and

12    may be lengthy. Moreover, in some cases a background or security check will reveal that

13    positive (derogatory) information on the subject alien is possessed by some agency other than

14    USCIS without necessarily revealing the substance of that information. In such cases,

15    USCIS works closely with the other law enforcement or intelligence agencies to obtain all

16    available information concerning the positive result in order to properly evaluate its

17    significance. Even where the FBI or a third agency has provided a final response, a case may

18    still be considered pending where the response requires further investigation or review by

19    USCIS or another agency. It is vitally important to thoroughly screen each applicant in

20    order to resolve all concerns of a law enforcement or national security nature before

21    determining that an individual is eligible for an immigration benefit.

22    12. USCIS reports the average processing times for specific applications and petitions on the

23    USCIS website. This information reflects only average processing times on the date the

24    information is published. The publicly announced processing times only reflect cases that

25    are considered to be within the control of USCIS. Cases considered to be within USCIS

26    control are defined as those which are ready to be adjudicated. Cases with pending FBI

27    name checks are not considered to be within the control of USCUS. Average processing

      times fluctuate widely and will sometimes even regress for a specific time due to a number of

1    factors, including a reallocation of agency resources, reordering of the agency's priorities,

2    and other reasons. Additionally, not every application will require the same level of inquiry.

3    Some may require a more detailed level of review and or investigation by either the USCIS

4    or other agencies for a number of reasons ranging from the alien's eligibility for the benefit

5    sought to national security concerns. Accordingly, even when it appears that the adjudication

6    of a particular application is outside the average processing time, this does not establish that

7    the delay is unreasonable or even due to factors within the control of USCIS.

8    13. In order to address the increasing number of mandamus actions filed nationwide by aliens

9    awaiting decisions on their petitions and applications in a consistent and fair manner, USCIS

10   issued specific guidelines for requesting an expedited name check from the FBI. Expedited

11   processing may be pursued in the following situations: Military Deployment Age-out cases

12   not covered by the Child Status Protection Act and applications affected by sunset provisions

13   such as the Diversity Visa Program; Compelling reasons provided by the requesting office

14   such as critical medical conditions; Loss of Social Security benefits or other subsistence at

15   the discretion of the Director. To my knowledge, Plaintiff has not requested expedited

16   processing and has not submitted evidence establishing that any of the foregoing

17   requirements for expedited processing are fulfilled. Moreover, U.S. Citizenship and

18   Immigration Services (USCIS) will not routinely request that the FBI expedite a name check

19   solely on grounds that a mandamus action has been filed.

20   14. Regarding this pending name-check, there are three possibilities:(1) in the very likely event

21   that the FBI name check ultimately clears with a finding of "no record" or "NR," TSC will

22   immediately place the application in the electronic queue to be scheduled for interview in the

23   Miami District Office or the appropriate sub-office on the first available date and transfer the

24   A-file to the place where the interview will be held. (2) In the less likely event that the FBI

25   eventually reports a "positive response" or "PR," significant additional time would likely be

26   required while USCIS learns the precise nature of the positive information and determines

27   whether it would have any bearing on the outcome of the adjudication, and (3) as long as the

Declaration of Joyce A. Brown  5          Case No.: 07-cv-02153, District of Columbia

Case 1:07-cv-01278-RMU     Document 24     Filed 05/05/2008     Page 46 of 46
Mar 11 Case 1:07-cv-02153-ESH     Document 12-2     Filed 03/12/2008     Page 6 of 6
0872aa     Joyce A. F. Brown                                                        P.

1    FBI query continues to return its current response of "pending" or "IP," this case will not be

2    scheduled for interview.

3  15. Currently, the Miami District Office has a total of 15,773 N-400 cases that are pending FBI

4    name checks. There are approximately 1,134 N-400 cases to be scheduled at the Miami

5    District Office that have been pending completion of background checks longer than the

6    petitioner's case.

7  16. While the naturalization application remains pending, plaintiff retains all of the rights and

8    benefits of a permanent resident of the United States, including the right to live and work in

9    this country and to travel freely abroad.

10

11    I declare under penalty of perjury that the foregoing is true and correct.

12    Executed on this 11th day of March, 2008 at Dallas, Texas.

13

14

15    Joyce A. Brown

16    Supervisory Center Adjudications Officer

      Texas Service Center

17

18

19

20

21

22

23

24

25

26

27